JOHN WELCH ET AL. *v.* ZONING BOARD OF APPEALS OF THE TOWN OF NORTH BRANFORD

KING, C. J., ALCORN, HOUSE, THIM ·and RYAN, Js.

Argued April 2—decided April 22, 1969

*Vincent J. Bruno,* for the appellants (plaintiffs).

*Charles A. Sherwood,* for the appellee (defendant).

ALCORN, J.  The plaintiffs own land on the southeasterly side of route 80, a public highway in North Branford.  They applied to the defendant zoning board of appeals for approval of the location as a site for a gasoline filling station.  The board denied the application, and an appeal taken by the plaintiffs from that decision to the Court of Common Pleas was dismissed.  The present appeal asserts

error in the conclusions of the court that there was evidence to support the decision of the board and that the board did not act illegally, arbitrarily and in abuse of its discretion and also asserts that the court erred in denying the plaintiffs the right to cross-examine "interested parties" and the right to demonstrate the improper action of the board by the introduction of evidence at the trial.

A certificate of approval of the location by the board was a prerequisite to the issuance, by the commissioner of motor vehicles, of a license for the sale of gasoline. General Statutes § 14-321. In passing upon the plaintiffs' application for approval of the location, the board was acting as an administrative agency of the state. *Etzel* v. *Zoning Board of Appeals,* 155 Conn. 539, 541, 235 A.2d 647; *Socony Mobil Oil Co.* v. *Zoning Board of Appeals,* 153 Conn. 257, 259, 216 A.2d 201; *Silver Lane Pickle Co.* v. *Zoning Board of Appeals,* 143 Conn. 316, 319, 122 A.2d 218; *Watson* v. *Howard,* 138 Conn. 464, 468, 86 A.2d 67. As such it was required to hold a hearing and could issue no certificate approving the location unless it found "that such location is suitable for the sale of gasoline and other products, due consideration being given to the proximity of schools, churches, theaters or playhouses or other places of public gatherings, intersecting streets, traffic conditions, width of highway and effect of public travel, and that such use of such proposed location will not imperil the safety of the public." General Statutes § 14-322.

The plaintiffs' application recited that their premises were 750 feet from the town hall, 750 feet from a church, 1200 feet from one road intersection, opposite another road intersection, 1350 feet from a little league field, and a mile and a half from the

high school. The plan was to erect a "three-bay" gasoline station if the necessary approval of the location was granted.

The board held a public hearing on the plaintiffs' application at which counsel for the plaintiffs made a lengthy statement descriptive of the proposed station and the surrounding area. In the course of that statement, he called upon the members of the board to utilize their own knowledge of the area in determining whether the safety of the public would be imperiled by the proposed gasoline station. He said: "I think this is far more valuable than having a paid professional safety expert. You know the town. You live here as I live here. You must view the site. I know that this board is conscientious in that aspect of the problem." Exhibits consisting of a booklet of "pertinent facts", a sketch of the proposed station layout, and photographs of the area were received in evidence, and counsel concluded his presentation with a discussion of factors which he considered pertinent to the requirements of General Statutes § 14-322. The plaintiffs were present at the hearing, but no testimony was offered by them or by other witnesses other than a statement by the plaintiff John Welch concerning the location of a fence.

No persons appeared at the hearing in opposition to the application. At the conclusion of the statement by counsel for the plaintiffs, however, the chairman of the board stated that he had received a letter in opposition to the application. He read the letter, in full, into the record, and no objection to the reading was made by the plaintiffs or their counsel. The purport of it was that a gasoline station at the proposed location would increase an already existing hazard to public safety. The opposition to the application expressed in the letter was based on

assertions that the nearby church was in constant use, not only on Sunday but for meetings of various organizations on weekdays, that the town hall was regularly used for public gatherings, that a library located approximately 250 feet from the plaintiffs' property was constantly active and expanding its facilities, that a store with limited parking facilities was located about 300 feet from plaintiffs' property, that general parking in the area was extremely limited, that there were five narrow intersecting streets at distances ranging from directly opposite to 1200 feet away from the location with various visibility problems, that route 80 itself was too narrow to accommodate the present traffic over it, and that a number of gasoline stations already existed on the south side of route 80 with none on the north side so that westbound vehicles had to make left turns across eastbound lanes for service.

After the letter in opposition had been read, the chairman of the board inquired whether any one wished to speak. Neither the plaintiffs nor their counsel spoke, nor did they request an opportunity to offer rebuttal evidence or to call the writer of the letter as a witness or to cross-examine him.

Proceedings before an administrative board acting in a quasi-judicial capacity, such as this board, are informal, and the board is not bound by strict rules of evidence. *Watson* v. *Howard,* 138 Conn. 464, 468, 86 A.2d 67. Nor does due process guarantee any particular form of state procedure. *Katz* v. *Brandon,* 156 Conn. 521, 537, 245 A.2d 579; *Graham* v. *Houlihan,* 147 Conn. 321, 330, 160 A.2d 745, cert. denied, 364 U.S. 833, 81 S. Ct. 70, 5 L. Ed. 2d 57. The guiding rule is that, at the hearing, "no one may be deprived of the right to produce relevant evidence or to cross-examine witnesses produced by his ad-

versary or to be fairly apprised of the facts upon which the board is asked to act." *Parsons* v. *Board of Zoning Appeals,* 140 Conn. 290, 293, 99 A.2d 149; *Wadell* v. *Board of Zoning Appeals,* 136 Conn. 1, 9, 68 A.2d 152; see 2 Am. Jur. 2d 234, Administrative Law, § 424. In the present case, no witnesses were offered either in support of or in opposition to the application, as already stated. It is perfectly clear from the record, however, that the plaintiffs were afforded full opportunity to present their case, were fully informed of the letter offered in opposition and were not denied the opportunity, if they had wished to ask for it, to call and examine the writer of the letter. Indeed, they make no claim to the contrary in the present appeal. "The principle requiring a testing of testimonial statements by cross-examination has always been understood as requiring, not necessarily an actual cross-examination, but merely an *opportunity to exercise the right to cross-examine* if desired." 5 Wigmore, Evidence (3d Ed.) § 1371. There was no denial of due process at the hearing before the board.

At the conclusion of the hearing the board held an executive session and unanimously denied the plaintiffs' application. In the formal notice of its decision, the board gave no reason for the action taken.

In their appeal to the court below, the plaintiffs claimed that their "fundamental and basic rights had been violated" by allowing the letter in opposition to their application to be read into the record before the board. It is clear from what we have already said that the court was correct in overruling that claim. Since the plaintiffs offered no objection to having the letter read into the record, the board was entitled to consider all of the informa-

tion offered at the hearing, including the letter, along with their own personal knowledge of the situation, which the plaintiffs had urged them to utilize in reaching their decision. *Parish of St. Andrew's Church* v. *Zoning Board of Appeals,* 155 Conn. 350, 360, 232 A.2d 916; *Forest Construction Co.* v. *Planning & Zoning Commission,* 155 Conn. 669, 676, 236 A.2d 917; *Parsons* v. *Board of Zoning Appeals,* 140 Conn. 290, 292, 99 A.2d 149.

Although the board stated no reason for its decision, the minutes of its executive session disclose that each member of the board stated his personal reason for voting against the application. These individual views are not available to show the reason for, or the ground of, the board's decision. *Grady* v. *Katz,* 124 Conn. 525, 531, 1 A.2d 137; *Thayer* v. *Board of Appeals,* 114 Conn. 15, 20, 157 A. 273. At the hearing on the appeal in the court below, however, the plaintiffs sought to introduce evidence to rebut the statements made by the members of the board as reasons for their voting as they did and also sought to call the members of the board and the writer of the letter which had been read at the hearing before the board for cross-examination. The claims now made are that the plaintiffs, as of right, could have cross-examined the members of the board at the public hearing but were deprived of that right because, the members having then expressed no views, there was nothing then on which a cross-examination could be made; that the personal knowledge of the situation possessed by the members of the board and on which they had acted should be subject to cross-examination; and that the writer of the "hearsay" letter should be cross-examined. The court correctly overruled these claims.

The letter was no more "hearsay" than the un-

sworn statement made to the board by the plaintiffs' counsel at the informal hearing which evolved, and the time and place to have called and examined the writer of the letter was then and there. *Parsons* v. *Board of Zoning Appeals,* supra, 293. The short answer to the effort to cross-examine the members of the board is that cross-examination of the members of the board was not permissible either at the original hearing or on the appeal in the court below. *Chicago, B. & Q. Ry. Co.* v. *Babcock,* 204 U.S. 585, 593, 27 S. Ct. 326, 51 L. Ed. 636. "Just as a judge cannot be subjected to such a scrutiny, . . . so the integrity of the administrative process must be equally protected." *United States* v. *Morgan,* 313 U.S. 409, 422, 61 S. Ct. 999, 85 L. Ed. 1429; see 2 Am. Jur. 2d, Administrative Law, § 754.

The effort to offer evidence in the court below to rebut the views expressed by the members of the board was equally lacking in merit. It was not the function of the court to listen to rebuttal of the statements made by board members in the executive session which the plaintiffs would appear to treat as testimony in opposition to their application. The discretion to grant or deny the certificate rested with the board, and the court's function was to determine whether the board acted illegally, arbitrarily or in abuse of its discretion on the record before it. *Helfant* v. *Zoning Board of Appeals,* 153 Conn. 93, 95, 214 A.2d 371. It would have been preferable, and of assistance to the court, if the board collectively had formally stated the reason or reasons for its action as was done in cases such as *Atlantic Refining Co.* v. *Zoning Board of Appeals,* 142 Conn. 64, 67, 111 A.2d 1, and *Dadukian* v. *Zoning Board of Appeals,* 135 Conn. 706, 710, 68 A.2d 123. The primary question for the court, however,

was whether the board had reached its conclusion after taking into account the matters which General Statutes § 14-322 required it to consider. *Socony Mobil Oil Co.* v. *Zoning Board of Appeals,* 153 Conn. 257, 259, 216 A.2d 201. The statements made by the individual members as they voted clearly indicated that they were fully cognizant of the duty imposed on them by the statute. In reaching their conclusion they were entitled to consider their own knowledge of the situation, as, indeed, the plaintiffs had urged them to do. *Dubiel* v. *Zoning Board of Appeals,* 147 Conn. 517, 522, 162 A.2d 711; *Mrowka* v. *Board of Zoning Appeals,* 134 Conn. 149, 154, 55 A.2d 909. It would appear that that knowledge led them to a decision that the hazard to public safety required a denial of the application as advocated in the letter of opposition. The board followed approved procedure by setting forth in its return the facts known to the members which were considered by them in reaching their decision. 8A McQuillin, Municipal Corporations (Rev. Ed. 1965) § 25.266.

The burden of showing that the board acted without sufficient evidence, illegally, arbitrarily, or in abuse of its discretion was on the plaintiffs. The court correctly held that the plaintiffs did not sustain that burden.

There is no error.

In this opinion the other judges concurred.