[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 1554
This is an administrative appeal arising from the actions of the defendant Zoning Board of Appeals of the City of Bristol,[1] which denied the plaintiffs' appeal of a cease and desist order affecting construction of an addition to their family home. The plaintiffs, Joseph and Janice Mercieri, claim to be aggrieved by virtue of their detrimental reliance on a building permit and zoning certificate issued by the City of Bristol. The plaintiffs have asked the court to sustain their appeal, and to remand the case to the defendant zoning board of appeals with direction to vacate the cease and desist order.
In their amended appeal dated August 22, 1991, the plaintiffs raise five separate issues,[2] claiming that the defendant zoning board of appeals acted illegally, arbitrarily and in abuse of its discretion for the following reasons: that the defendant zoning board of appeals is barred from rescinding the plaintiffs' zoning certificate because no person claiming to be aggrieved by the issuance of this certificate appealed to the defendant within thirty days of its issuance, as is required by General Statutes § 8-7; that the defendant zoning board failed to state the reasons for its decision upon the record, in violation of §8-7; that the defendant zoning board of appeals is estopped from enforcing its zoning regulations because the plaintiffs were unjustifiably induced to commence construction of an addition on their property, and because the enforcement of the regulations would be highly inequitable and oppressive; that the denial of the plaintiffs' appeal was not in accord with the zoning regulations of the City of Bristol; and that the denial was contrary to the evidence presented at the defendant zoning board of appeal's hearing of the appeal.
The defendant has filed two special defenses. The first claims that the court lacks subject matter jurisdiction[3]
because the plaintiffs' amended appeal was served well past the statutory appeal period prescribed by General Statutes § 8-7
for appeal of the cease and desist order. The second asserts that the plaintiffs' original appeal was not served and returned to court in a timely manner, as is required by General Statutes § 52-46a.
The parties have filed the appropriate briefs, the pleadings are closed, and arguments were made at hearings held before the court. On the issue of aggrievement, the plaintiff Janice CT Page 1555 Mercieri provided testimony for the court establishing that she and Joseph Mercieri were the owners of the property in question, and that they resided in the homestead at that location. The issue of aggrievement presents a question of fact for the court to evaluate in the course of determining jurisdiction over the subject matter of the appeal. Walls v. Planning ZoningCommission, 176 Conn. 475, 477-79 (1979); I. R. Stich Associates,Inc. v. Town Council, 155 Conn. 1, 3 (1967); Fuller v. Planningand Zoning Commission of the Town of New Hartford, 21 Conn. App. 340,343-44 (1990). The court finds that the plaintiffs have fulfilled their obligation of demonstrating specific, personal and legal interests in the subject matter of the appeal. The plaintiffs have further shown that their interests have been directly and injuriously affected by the defendant's denial of their appeal of the cease and desist order. Therefore, from the evidence adduced from the record and at the hearing, the court finds that plaintiffs are aggrieved persons within the meaning of General Statutes § 8-8. Hall v. Zoning Commission, 181 Conn. 442,444, 445 (1980).
 I
The court finds the following facts from the record presented with this appeal:
On November 19, 1990, the plaintiffs, Joseph and Janice Mercieri, owned and occupied a single family dwelling at 59 Old Cider Mill Road in Bristol, Connecticut. This property, consisting of a home and garage with an adjacent in-ground swimming pool, was located within an R-25, single family residence zone in the City of Bristol, Connecticut, as defined by the defendant's Zoning Regulations effective February 1, 1981.[4] The property is also identified as Lot #8, Map 62, Old Cider Mill Road in Bristol. The lot size was 43, 764 square feet.
On November 19, 1990, the plaintiffs applied for a building permit for construction of an addition to their dwelling. The addition was planned to consist of a bedroom, great room, 2 baths, pool kitchen, new laundry and loft areas. The original dwelling was 3,400 square feet. The planned construction would add 1,700 square feet to the dwelling. In support of their application, the plaintiffs submitted a letter dated November 19, 1990, signed by Janice Mercieri, representing that the planned addition was "not to be used for, or rented as, a separate unit (apartment). It is to be part of an existing single family home. CT Page 1556 The Building plan shows all indications of more than 1 unit or easily converted to more than 1 unit." A copy of this letter was submitted to the Zoning Commission, Chairman; the Zoning Board of Appeals, Chairman; the Assessor's Office; and to Alan Weiner, the defendant's City Planner. Building Permit No. 55157 was issued to the plaintiffs on November 19, 1990 by Richard Pratt, the duly authorized Building Official for the City of Bristol. This permit bears the inscription "ZC #6948", referencing Zoning Certificate ZC-No. 6948, also issued on that date by Richard Pratt, as the duly authorized representative of the Zoning Commission for the City of Bristol.[5] The Zoning Certificate specifies that the property was properly zoned for the use and building of an addition consisting of four rooms, a pool kitchen, great room, loft, laundry and two baths. Construction was commenced immediately after the zoning certificate and building permit were issued. By February 1, 1991, substantial work upon the addition had been completed. This consisted of excavation, pouring of footings, framing, erection of the roof supports and plywood base, and partial exterior insulation.[6] The record does not disclose the specific dollar cost of this work, or the dates upon which each aspect of the work was performed.
On February 1, 1991, George Huston, the Zoning Enforcement officer for the City of Bristol, issued a cease and desist order prohibiting further work on the plaintiffs' addition. The order indicates that the structure and/or site constitutes an "Illegal Building — Home — 2 Family." Huston sent a letter to the plaintiffs under date of February 5, 1991, advising them that they had violated "Bristol Zoning Regulations, Article V.A. 11 — Illegal Accessory Apartment (In-Law)," through their failure to obtain a special permit, and as their "Apartment (House Addition) exceeds [the] maximum net floor area of 700 square feet.[7]
This correspondence orders the plaintiffs to "immediately cease construction."
 I
Through a second letter sent to the plaintiffs under date of February 21, 1991, Huston classified the original zoning permit as "improper." In a memorandum dated February 28, 1991, Huston supplemented the basis for his determination that the plaintiffs' addition was not in compliance with applicable city zoning regulations by citing Bristol Zoning Regulations, Article Seven.D.12 of the regulations dated February 1, 1981, pertaining to "Failure to Obtain Special Permit for two family home. CT Page 1557 (Variance also required (sic)."[8]
On February 7, 1991, the plaintiffs submitted Application #2914, appealing the cease and desist order dated February 5, 1991. On February 21 and March 1, 1991, proper notice was published for the hearing of the application scheduled to take place on March 5, 1991.
The defendant board heard the plaintiffs' application on March 5, 1991, and again on March 12, 1991. Summary minutes of the meeting were apparently made to record the transactions of the board on those dates. Return of Record, Exhibit U, Exhibit Y.[9] (Hereinafter, Minutes of March 5, 1991 or Minutes of March 12, 1991.) The minutes of the meeting on March 5, 1991 reflect that counsel for the plaintiffs stipulated that the cease and desist order issued on February 1, 1991 would be addressed "as if it had cited a violation of the old regulations effective 2-1-81 referring to Article 7, Section D.12." Minutes of March 5, 1991, p. 6. The parties effectively stipulated that the alleged violation to be addressed, pursuant to this regulation, was the "failure to obtain a Special Permit for a two-family home, also a variance was required." Id. There is no indication that the plaintiffs' counsel admitted that their interests were bound by the application of that section to the Mercieri property. The minutes of the March 5, 1991 hearing clearly: establish that plaintiffs' counsel raised the issue of municipal estoppel before the board. The minutes state: "Lastly, Attorney Furey [counsel for the plaintiffs] stated that under Connecticut State Law when a resident acts in good faith and obtains the necessary permits and relies on those permits, the City can be estopped from asserting rights equitably. [He further argued that] The City should be prevented from enforcing this cease-and-desist order." Minutes of March 5, 1991, p. 8. The public hearing was closed, and continued until April 2, 1991, to permit the members of the board an opportunity to inspect the site and study materials submitted by the parties.
At the continued hearing on March 12, 1991, several board members stated their conclusions following inspection of the construction site.[10] The plaintiffs' appeal of the cease and desist order issued February 1, 1991 was denied by a unanimous, summary vote of the board on March 12, 1991. Minutes of March 12, 1991, p. 2.
This appeal to the Superior Court followed. CT Page 1558
 II
The plaintiffs claim that the defendant zoning board of appeals acted illegally, arbitrarily and in abuse of its discretion, and that the defendant zoning board of appeals is barred from rescinding the zoning certificate which permitted construction of the addition to the plaintiffs' home, because no person claiming to be aggrieved by the effect of this certificate appealed to the defendant within thirty days of its issuance, as is required by General Statutes § 8-7. The plaintiffs bear the burden of showing that the board acted illegally, arbitrarily, and in abuse of its discretion by unilaterally revoking their zoning certificate notwithstanding the failure of an aggrieved person to submit a timely appeal. Bloom v. ZoningBoard of Appeals, 233 Conn. 198, 206 (1995); Welch v. Zoning Board of Appeals, 158 Conn. 208, 216 (1969). The court finds that the facts of this case support the plaintiffs' contention, and finds that the zoning certificate at issue was revoked beyond the time permitted by § 8-7. Accordingly, the court finds this issue in favor of the plaintiffs.
General Statutes § 8-7, as effective in 1991, established the protocol and procedure for bringing an appeal to a zoning board of appeals. The statute provided in part that "[a]n appeal may be taken to the zoning board of appeals by any person aggrieved or by any officer, department, board or bureau of any municipality aggrieved and shall be taken within such time as is prescribed by a rule adopted by said board, or, if no such rule is adopted by the board, within thirty days, by filing with the zoning commission or the officer from whom the appeal has been taken and with said board a notice of appeal specifying the grounds therefore." § 8-7. This section, by its terms, applies to municipal agencies as well as individuals who claim to be aggrieved by the issuance of any "order, requirement or decision of [an] official charged with the enforcement of the zoning regulations. . ." § 8-7.
No specific provisions for the time within which an aggrieved party may appeal such an order or decision are contained within the zoning regulations in effect for the City of Bristol at the time the plaintiffs' building documents were issued. See Zoning Regulations, City of Bristol, Connecticut, Effective Date: February 1, 1981, Return of Record, Exhibit C.[11] Section XIII.B.1 of the Zoning Regulations adopted by the City of Bristol CT Page 1559 for use following December 21, 1990 specifies that "[a]ll appeals to the Zoning Board of Appeals from an order, requirement, decision or determination of the Zoning Enforcement Officer shall be taken within such time as is prescribed by a rule adopted by the Zoning Board of Appeals." Return of Record, Exhibit B. A close reading of the 1990 Zoning Regulations fails, however, to reveal that any such rule has been published within that text. No such rule, promulgated by any agency, was presented with the Return of Record or submitted to the court for consideration in this case.
"The zoning commission decides the manner in which the zoning regulations are enforced, namely, who acts as the zoning enforcement officer. The zoning regulations are then enforced by the officer, board or authority designated in the regulations. Where the zoning commission designates someone as the zoning enforcement officer and does not retain control or veto power over the zoning enforcement officer's decisions, section 8-7vests the power to review decisions of the zoning enforcementofficer in the zoning board of appeals." (Emphasis provided; footnotes omitted.) R. Fuller, 9 Connecticut Practice, Land UseLaw and Practice, § 8.6, p. 142. Article 12.B of the Zoning Regulations, City of Bristol, Connecticut, Effective Date: February 1, 1981, establishes that enforcement of that municipality's zoning regulations "shall be enforced by the Building Official and/or his designee who is empowered to cause any building, structure, place or premises to be inspected and examined, and to order in writing the remedying of any condition found there to exist." Return of Record, Exhibit C. In this case, the defendant's building official, and tacit zoning enforcement officer, was Richard Pratt, who issued the applicable zoning certificate and building permit to the plaintiffs on November 19, 1990.[12] Similarly, Section XII.B of the Zoning Regulations for the City of Bristol effective December 21, 1990, empowers the Building Official or the Zoning Enforcement Officer to order inspection and examination of any structure, and to issue directives for remedy of conditions and violations thereby identified. Return of Record, Exhibit B. Neither the 1981 or 1990 Zoning Regulations reflect any explicit retention of by the board or zoning commission of "veto power" over Pratt's decisions. Return of Record, Exhibit B and Exhibit C. Accordingly, pursuant to the provisions of § 8-7, any appeal of an order or decision made by the City of Bristol's zoning enforcement officer must be brought within thirty days from the effective date of such action. CT Page 1560
The record in this case provides no reasonable basis for this court to conclude that George Huston's issuance of the cease and desist order on February 1, and the submission of the violation letter on February 5, 1991 resulted from a specific inspection, examination, or determination that the plaintiffs' construction was proceeding in any manner other than that described by the original plans. Under the circumstances of this case, the issuance of the cease and desist order, and the submission of the violation letter, constitute a request for the board's reconsideration, as an appeal, of Richard Pratt's decision to award the original zoning certificate and building permit on November 17, 1990. General Statutes § 8-7 provides only for such an appeal to be brought to the City of Bristol's zoning board of appeals. To the extent that in cases such as this, §8-7 "vests the power to review decisions of the zoning enforcement officer in the zoning board of appeals," such power would only survive in the context of an appeal brought within the thirty-day period following issuance of the plaintiff's zoning certificate, as prescribed by, that statute. R. Fuller, supra, § 8.6, p. 142.
Here, the plaintiffs received their building documents some ten to eleven weeks prior to the City of Bristol's sua sponte issuance of the cease and desist order and violation letter. The defendant clearly failed to comply with the thirty day provision established by § 8-7 of the general statutes, rendering their efforts at contesting the propriety of the original zoning certificate untimely and invalid. The plaintiffs have met their burden of proving that no person claiming to be aggrieved by the effect of this zoning certificate brought an effective appeal to the defendant within thirty days of its issuance, as is required by General Statutes § 8-7. R. Fuller, supra, § 8.6, p. 142. The plaintiffs have accordingly established that the defendant acted illegally and in abuse of its discretion by denying the plaintiffs' appeal from the recision of their November 17, 1990 zoning certificate. Therefore, this issue is found in favor of the plaintiffs.
 III
The plaintiffs claim that the defendant board is estopped from utilizing its authority to enforce revocation of their zoning certificate because they were unjustifiably induced to commence construction of the addition on their property, and did CT Page 1561 so in reliance upon actions of an agent for the City of Bristol. The plaintiffs claim that as a result of these actions, and because enforcement of the zoning regulations under these circumstances would be highly inequitable and oppressive, the board is estopped from prohibiting construction upon the addition. The burden of showing that the board acted in such an improper manner falls upon the plaintiffs. Bloom v. Zoning Boardof Appeals, supra, 233 Conn. 206; O'Sullivan v. Bergenty,214 Conn. 641, 650 (1990). The court finds that the plaintiffs have sustained their burden at law, and accordingly finds this issue in their favor.
Issues such as laches and estoppel are properly brought to the court for resolution, even though the subject matter was presented originally to a zoning board for review. See Osterbergv. Seymour Zoning Board of Appeals, Superior Court, Judicial District of Ansonia/Milford at Milford, Docket No. 031218, (November 15, 1990) (Fuller, J.), 1990 Ct. Sup. 3449, 3451.[13]
"While such claims are more likely to arise in an injunction action [brought] to enforce municipal regulations . . . these are also proper issues to raise in an appeal from a decision of a zoning board of appeals upholding a decision of the zoning enforcement officer." Id.
It is generally acknowledged that "`"[u]nder our well-established law, any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury."'. . .Kimberly-Clark Corporation v. Dubno, 204 Conn. 137, 148,527 A.2d 679 (1987)." (Other citations omitted; internal quotation marks omitted.) O'Sullivan v. Bergenty, supra, 214 Conn. 648. The burden required to establish equitable estoppel a valid basis is clear: "In Kimberly-Clark Corporation v. Dubno, supra, 148, [the Supreme Court] stated: `[I]t is the burden of the person claiming the estoppel to show that he exercised due diligence to: ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge.'" (Other citations omitted; internal quotation marks omitted.) O'Sullivan v. Bergenty, supra, 214 Conn. 650. Due diligence may be proved by direct evidence or through properly drawn inferences. See O'Sullivan v. Bergenty, supra,214 Conn. 650-51.[14]
CT Page 1562
Similar principles apply when estoppel is claimed against a municipality. In such a case, the proponents must establish first, that an agent of a town induced them to believe that certain facts existed and to act on that belief; and second, that they changed their positions in reliance upon those facts, thereby incurring some injury. Gelinas v. West Hartford,225 Conn. 575, 590 (1993). "The law of equitable estoppel as applied to municipalities in the enforcement of zoning laws is well established. . . . `[I]n special circumstances, a municipality may be estopped from enforcing its zoning regulations.' . . . `[A]lthough estoppel may not generally be invoked against a public agency in the I exercise of its governmental functions . . . an exception is made where the party claiming estoppel would be subjected to a substantial loss if the municipality were permitted to negate the acts of its agents . . . [Accordingly, . . . estoppel] against municipalities is . . . limited and may be invoked against the enforcement of zoning regulations (1) only with great caution, (2) only when the resulting violation has been unjustifiably induced by an agent having authority in such matters, and (3) only when special circumstances make it highly inequitable or oppressive to enforce the regulations. . . .' (Emphasis added.) Zoning Commission v.Lescynski, [188 Conn.] 731-32 [1982]; see also Gelinas v. WestHartford, 225 Conn. 575, 590, 626 A.2d 259 (1993); T. Tondro, Connecticut Land Use Regulation, (2d Ed. 1992) pp. 586-88." (Internal citations omitted.) Dornfried v. October Twenty-Four,Inc., 230 Conn. 622, 634-35 (1994). The foregoing principles were most recently affirmed, in their entirety, in Bloom v. ZoningBoard of Appeals, supra, 233 Conn. 203 n. 6.
Where municipal estoppel is at issue, the injury resulting from that reliance must be of such a nature that it would be "highly inequitable or oppressive to enforce the [town's zoning] regulations." Zoning Commission v. Lescynski, supra, 188 Conn. 732. In determining whether such "special circumstances" exist as are required for the application of municipal estoppel, the trial court must undertake the process of weighing competing equitable considerations such as the defendant's conduct in permitting initial construction of the plaintiffs' addition, the extent of the plaintiffs' reliance upon that permission, and the condition of the neighborhood. West Hartford v. Rechel, 190 Conn. 114, 125
(1983). See Zoning Commission v. Lescynski, supra, 188 Conn. 732.
Whether a party has met its substantial burden of proof in CT Page 1563 asserting the doctrine of municipal estoppel, and establishing that a "substantial loss" would be sustained if the municipality were permitted to negate the acts of its agents, is a finding of fact to be determined by the trial court. Dornfried v. OctoberTwenty-Four, Inc., supra, 230 Conn. 636. "[S]ubstantial loss", in the context of municipal estoppel, has been likened to an "out of pocket investment, such as a capital investment in equipment, a building, or real property, that would be lost if the town zoning regulation were enforced." Id., 640. Such a "substantial loss" has been found to have occurred, for example, where an owner made j permanent improvements to and expended large sums of money in construction of real property "in good faith reliance on [a building] permit and apparent acquiescence by city officials." See River Forest State Bank v. Hillside, 6 Ill.2d 451, 454-55,129 N.E.2d 171 (1955), cited in Dornfried v. October Twenty-Four,Inc., supra, 639-640.[15]
"Cases where the estoppel defense has succeeded are ones in which town officials acted to issue approvals when they were fully aware of the intended [use] to which a property or structure was to be put." Osterberg v. Seymour Zoning Board ofAppeals, supra, 1990 Ct. Sup. 3456. Where the plaintiffs' building plans had been submitted to and approved by the town building inspector, who had issued zoning and building permits after examining the site and proposals, the town and its zoning enforcement officer were estopped from taking action, one year after the completion of construction, to enforce applicable set-back regulations. Osterberg v. Seymour Zoning Board of Appeals,
supra, 1990 Ct. Sup. 3457. "In Buddenhagen v. Czapla, 13 Conn. L. Trib. 40, October 12, 1987, estoppel was found, sufficient to prevent a zoning enforcement action, where an architect presented building plans and the town's building officials approved them without examining them, and construction then occurred according to the plans. . . . Kilbourne v. City of New Britain, 109 Conn. 422, recognizes that there are vested rights to build under a building permit, where substantial construction takes place and where a building is completed in reliance upon permits issued by local zoning authorities." (Citations omitted.) Osterberg. v.Seymour Zoning Board of Appeals, supra, 1990 Ct. Sup. 3457.
The Connecticut Supreme Court thoroughly considered the tenets of municipal estoppel in Bloom v. Zoning Board of Appeals,
supra, 233 Conn. 198. While that case specifically focused upon the validity of a variance, its lessons are pertinent to the present litigation. The dispositive issue in Bloom v. ZoningCT Page 1564Board of Appeals was "whether the principles of equitable estoppel entitled the owners of a legally nonconforming building to a variance on the ground of hardship when, in reliance on anerroneously issued building permit, the owners have expanded andaltered the building within the nonconforming areas." (Emphasis added.) Id., 199. The facts of Bloom v. Zoning Board of Appeals
disclosed that in June of 1991, the Norwalk zoning enforcement officer had approved plans submitted by three restaurant owners for renovation of the building which housed their enterprise. After approval by the Norwalk zoning commission, the owners' application was approved and a building permit was issued in August 1992. Pursuant to these approvals, the owners began construction sometime in August or September 1992. In January 1993, as a result of the plaintiffs' complaint that the construction violated setback provisions of the zoning regulations, the zoning enforcement officer issued a cease and desist order. In February 1993, the owners applied to the defendant Norwalk zoning board of appeals for a variance which would permit the construction. "After a duly noticed public hearing, the board granted the owners' application for the variance without making a specific finding regarding what hardship the owners would otherwise suffer." Id., 201.
The plaintiffs appealed the granting of the variance. The trial court "first concluded that the record failed to reflect any hardship that preexisted the construction that was commenced pursuant to the erroneously issued building permit." Bloom v.Zoning Board of Appeals, supra, 233 Conn. 201. The trial court further "noted that no case supports granting a variance because substantial construction had been undertaken based on the issuance of a building permit." Id., 202. "Nevertheless, the trial court went on to conclude, in light of the principles of equitable estoppel, that the owners had demonstrated a hardship. On this basis, the [trial] court dismissed the plaintiffs' appeal. Id., 202.
In response to the plaintiffs' subsequent appeal of the trial court's action, the Supreme Court stated: "We agree with the trial court's conclusion that there was no hardship according to the traditional analysis as it applies to variances. We conclude, however, that the trial court incorrectly dismissed the plaintiffs' appeal on the ground that the variance was properly predicated on the principles of equitable estoppel." Id. 203. As noted above, the Supreme Court took the opportunity in Bloom v.Zoning Board of Appeals to generally affirm the principles of CT Page 1565 equitable estoppel as that concept applies to municipalities.Bloom v. Zoning Board of Appeals, supra, 233 Conn. 203, n. 6. The court found, however, that those principles did not apply to the factual circumstances presented in Bloom v. Zoning Board ofAppeals, because the issue of municipal estoppel had been raised not by the parties, "but by the trial court itself." Id., 204. As the "trial court [had] incorrectly raised and decided the issue of whether the principles of equitable estoppel could support a hardship for the purposes of a variance" under the facts presented, the Supreme Court reversed the judgment of the trial court. Id., 205.
In overturning the trial court's decision, the Supreme Court noted significant factors which are not at issue in the present case. In Bloom v. Zoning Board of Appeals, "[t]he theory of equitable estoppel had not been raised before the board. Furthermore, the owners had not raised it in the trial court, either in their own response to the plaintiffs' appeal, during the hearing in the trial court, or in their trial brief . . . The doctrine [of equitable estoppel] requires, however, more than a mere act in reliance on the conduct of the municipality; see, e.g., Kimberly-Clark Corp. v. Dubno, supra, 204 Conn. 137, 149; and the factual issues that must be raised in order to support the equitable estoppel require an evidentiary hearing. Because the court held no evidentiary hearing on this subject, the plaintiffs never had an opportunity to present an argument on the legal applicability of the doctrine of equitable estoppel to justify a variance. A fundamental premise of due process is that a court cannot adjudicate any matter unless the parties have been given a reasonable opportunity to be heard on the issues involved . . . and to present evidence and cross examine adverse witnesses . . ." (Citations omitted.) Bloom v. Zoning Board ofAppeals, supra, 223 Conn. 204.
The facts of the present case thus differ markedly from the facts at issue in Bloom v. Zoning Board of Appeals. In this case, the record reflects that the issue of equitable estoppel was raised both before the board and before the trial court. CompareBloom v. Zoning Board of Appeals, supra, 233 Conn. 211.[16] The facts of the present case specifically support the Mercieris' contention that they raised the issue of municipal estoppel in a timely and proper manner, at the hearing held before the defendant board on March 5, 1991.[17] Minutes of March 5, 1991, p. 8. The issue of estoppel was initially brought to the trial court's attention through paragraph 9.d. of the plaintiffs' CT Page 1566 Appeal From Decision of the Zoning Board of Appeals, dated March 19, 1991; and thereafter resubmitted to the court through paragraph 9.d. of the plaintiffs' Amended Appeal From The Decision of The Zoning Board of Appeals, dated August 22, 1991. The defendant denied the allegations of paragraph 9 of the amended appeal through its answer submitted under date of January 28, 1992.
The facts of this case strongly support the plaintiffs' claim to the succor they seek through application of the doctrines of equitable or municipal estoppel. Following the guidelines established by Dornfried v. October Twenty-Four, Inc., supra, the court has reviewed the record and considered the arguments of counsel "with great caution." 230 Conn. 635. The record establishes that the plaintiffs have met their burden of proving all requisite prongs of the test for municipal estoppel. The court finds that the plaintiffs were induced by an agent of the City of Bristol, building official Richard Pratt, to believe that they could lawfully embark upon the construction project ratified by the issuance of building permit No. 55157 and zoning certificate ZC #6948 on November 19, 1990; Dornfried v. OctoberTwenty-Four, Inc., supra, 230 Conn. 635; Gelinas v. WestHartford, supra, 225 Conn. 590. The plaintiffs' due diligence in attempting to ascertain the validity of the building documents is established through their submission of Janice Mercieri's letter of intent on November 19, 1990. O'Sullivan v. Bergenty, supra,214 Conn. 650-651.[18] This letter was submitted to the chairman of the City of Bristol's Zoning Commission, to the chairman of the Zoning Board of Appeals, to the city assessor's office, and to the city planner. The record is devoid of any indication that any of these individuals or agencies issued any response to Janice Mercieri's letter in November or December 1991, or in January 1992. The record, in its entirety, permits the court to infer that following the issuance of the construction permits, but prior to the issuance of the defendant's cease and desist order, the plaintiffs "`lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge.'"[19] O'Sullivan v. Bergenty,
supra, 214 Conn. 650-651. See also Osterberg v. Seymour ZoningBoard of Appeals, supra, 1990 Ct. Sup. 3456-57.
There is adequate evidence present in the record to form the basis of the court's conclusion that the plaintiffs changed their position in reliance upon the actions of the municipal agent who issued the building documents, and that they incurred injury CT Page 1567 thereby. Bloom v. Zoning Board of Appeals, supra, 233 Conn. 203
n. 6; Dornfried v. October Twenty-Four, Inc., supra, 220 Conn. 634-35;Gelinas v. West Hartford, supra, 225 Conn. 590. As noted in part I, the plaintiffs commenced construction immediately after receipt of the zoning certificate and building permit at issue. Construction continued for at least ten to eleven weeks, without any notification to the plaintiffs that the building documents had been issued in error. The record thereby supports the finding that the building permit and zoning certificate at issue were effective for a significant period of time, albeit during j the winter season.[20] Osterberg v. Seymour ZoningBoard of Appeals, supra, 1990 Ct. Sup. 3457. The court finds that such circumstances as are demonstrated here both caused and allowed the plaintiffs to labor, to their detriment, in reliance upon the actions taken by the city's agent. Compare West Hartfordv. Rechel, supra, 190 Conn. 114, 124-25 (record inadequate for determination whether defendant's reliance on municipality's actions would cause enforcement of zoning regulations to be highly inequitable or oppressive, requiring remand for trial on the issue of estoppel).
The record does not permit a finding of any specific dollar value attributable to the work that was performed upon the addition between November 17, 1990 and February 1, 1991 when the cease and desist order was issued.[21] However, it is clear that substantial construction had been performed during that time, including excavation, creation of footings, framing, roof supports, plywood sheathing, and partial exterior insulation.[22] From these facts, the court draws the reasonable inference that the plaintiffs had committed substantial sums of money toward the completion of their planned addition before they were ordered to halt construction. The plaintiffs thereby sustained the "substantial loss" contemplated by Dornfried v. October Twenty-Four, Inc.; supra, 230 Conn. 639-640; during the time when the zoning certificate and building permit were operative. See also, Osterberg v. Seymour ZoningBoard of Appeals, supra, 1990 Ct. Sup. 3456-57.
As noted above, the plaintiffs bear the burden of showing that they had been unjustifiably induced to perform construction upon the addition, as well as proving that the board is estopped from utilizing its zoning procedures to inequitably force them to discontinue that construction. Bloom v. Zoning Board of Appeals,
supra, 233 Conn. 206; Welch v. Zoning Board of Appeals, supra,158 Conn. 216. The plaintiffs have here have met their burden, CT Page 1568 have survived the test of Bloom v. Zoning Board of Appeals;
supra, 233 Conn. 203 n. 6, 211; and have proved that it would be highly inequitable and oppressive under these circumstances to permit the defendant to revoke the zoning certificate issued on November 19, 1990. In reaching its conclusions, the court has weighed the competing equitable principles presented through this segment of the appeal, including the defendant's conduct in permitting initial construction of the plaintiffs' addition, the substantial extent of the plaintiffs' reliance upon that permission, and the location of the plaintiffs' home in a neighborhood zones R-25 pursuant to the Zoning Regulations for the City of Bristol. West Hartford v. Rechel, 190 Conn. 114, 125
(1983). Because the court finds that the plaintiffs have met their burden of proof, and have established that they are entitled to the relief offered by application of the doctrine of municipal estoppel, they prevail on this issue. West Hartford v.Rechel, supra, 190 Conn. 125.
 IV
The plaintiffs claim that by revoking the zoning certificate, the defendant zoning board of appeals acted illegally, arbitrarily and in abuse of its discretion, as the defendant zoning board had failed to state the reasons for its decision upon the record, in violation of General Statutes § 8-7. This statute, as effective in 1991, provided in pertinent part: "Whenever a zoning board of appeals grants or denies any special exception or variance in the zoning regulations applicable to any property or sustains or reverses wholly or partly any order, requirement or decisions appealed from, it shall state upon itsrecords the reason for its decision . . . ." (Emphasis added.) Again, it is the plaintiffs' burden to show that the board acted illegally, arbitrarily and in abuse of its discretion to failing to comply with this statutory requirement. Bloom v. Zoning Boardof Appeals, supra, 233 Conn. 206; Welch v. Zoning Board ofAppeals, supra, 158 Conn. 216. In this case, although the plaintiffs have shown that the defendant failed to meet its legal obligations pursuant to § 8-7, such failure, in and of itself, is an insufficient basis for sustaining this appeal.Caserta v. Zoning Board of Appeals, 28 Conn. App. 256, 259, affirmed in part; , modified in part on other grounds, 226 Conn. 80
(1993). Thus, while the plaintiffs succeed on this issue, they thereby obtain only the foundation for consolation in this case.[23]
CT Page 1569
While the court agrees that the defendant board failed to comply with the practical requirements of § 8-7, the defendant's minutes reflect a good-faith effort to preserve the events of the hearings held on March 5 and March 12, 1991 in connection with this matter. These minutes would at least permit, if not facilitate, a summary review of the basis for the board's decision. It has been held that mere failure to comply with the recording requirements of § 8-7 is "not sufficient justification for the trial court's sustaining the plaintiff's appeal." Caserta v. Zoning Board of Appeals, supra,28 Conn. App. 259.
General Statutes § 8-7 is consistent with General Statutes § 8-7a, also effective in 1991. This section required that "[t]he zoning commission, planning commission, planning and zoning commission and zoning board of appeals shall call in a competent stenographer to take the evidence, or shall cause the evidence to be recorded by a sound-recording device, in each hearing before such commission or board in which the right of appeal lies to the superior court." In turn, § 8-7 and § 8-7a conformed with General Statutes § 8-8(i), as effective in 1991. This subsection included a definition of the contents of the record to be returned by a zoning board during appeal proceedings: "The record shall include, without limitation, (1) the original papers acted on by the board and appealed from, or certified copies thereof, (2) a copy of the transcript of the stenographic or sound recording prepared in accordance with § 8-7a, and (3) the board's findings of factand conclusions of law, separately stated." (Emphasis added.) § 8-8 (i), effective 1991.
General Statutes § 8-8(1), effective in 1991, established that after review of the proceedings of a zoning commission, the court "may reverse or affirm, wholly or partly, or may modify or revise the decision appealed from." Strict compliance with §8-7, § 8-8a, and § 8-8(i) would have expedited and enhanced the thoroughness with which the court could have considered the issues raised on appeal. "[W]here the board sets forth the reasons for its actions, the reviewing court is bound by those findings and may examine only those assigned grounds to determine whether they are reasonably supported by the administrative record or are clearly erroneous. Molic v. ZoningBoard of Appeals, 18 Conn. App. 159, 164-65, 556 A.2d 1049
(1989)." Caserta v. Zoning Board of Appeals, supra, 28 Conn. App. 260. However, if the reasons for denying or approving an CT Page 1570 application are not properly placed on the record by the zoning authority, if the reasons are absent or if its reasons are inadequate, the court has the burden of searching the record in an attempt to find some basis for the action taken. ProtectHamden/North Haven from Excessive Traffic Pollution, Inc. v.Planning Zoning Commission, 220 Conn. 527, 544-45 and n. 15 (1991); A. P. W. Holding Corp. v. Planning Zoning Board ofAppeals, 167 Conn. App. 182, 186 (1974); Stankiewicz v. ZoningBoard of Appeals, 15 Conn. App. 729, 732, affirmed, 209 Conn. 815
(1988). See also Stankiewicz v. Zoning Board of Appeals,211 Conn. 76, 77-78 (1989).
If the record reveals an adequate evidential basis for the board's decision, it will be affirmed. DeBeradinis v. ZoningCommission, 228 Conn. 187, 199 n. 7 (1994); Project Hamden/NorthHaven v. Planning and Zoning Commission of the Town of Hamden,
supra, 220 Conn. 545; Gross v. Planning Zoning Board ofAppeals, 171 Conn. 326, 329 (1976); Homart Development Co. v.Planning and Zoning Commission of the Town of Watertown, 26 Conn. App. 212,220 (1991). The action of the zoning authority will be sustained, and the appeal denied, if just one of the authority's collectively stated reasons is sufficient to support it. Bloom v.Zoning Board of Appeals, supra, 233 Conn. 208; Burnham v.Planning Zoning Commission of South Windsor, 189 Conn. 261, 265
(1983). "Where a zoning board of appeals does not formally state the reasons for its decision . . . the trial court must search the record for a basis for the board's decision." Bloom v. ZoningBoard of Appeals, supra, 233 Conn. 208; DeBeradinis v. ZoningCommission, supra, 228 Conn. 199 n. 7; Project Hamden/North Havenv. Planning and Zoning Commission of the Town of Hamden, supra,220 Conn. 545. If the record of the proceedings before the board reveals no adequate evidential basis for its action, the appeal may be sustained. A. P. W. Holding Corp. v. Planning ZoningBoard, supra, 167 Conn. 186-87, 188-89.
In creating a written record which sets forth the basis for a zoning board's decision, it is preferable for the agency to collectively and formally state its reasons for sustaining or denying an appeal. Welch v. Zoning Board of Appeals, supra,158 Conn. 215. Such statements are of assistance to the court which is called upon to determine whether the board acted illegally, arbitrarily, or in abuse of its discretion, based on the facts presented. Welch v. Zoning Board of Appeals, supra, 158 Conn. 215;Caserta v. Zoning Board of Appeals, supra, 226 Conn. 87. Although individual members of a board may state their personal CT Page 1571 reasons for voting against or in favor of an application, "[t]hese individual views are not available to show the reasons for, or the ground of, the board's decision." (Citations omitted.) Welch v. Zoning Board of Appeals, supra, 158 Conn. 214. The personal "reasons" given by certain zoning board members cannot amount to a formal, collective statement of the agency.Protect Hamden/North Haven from Excessive Traffic Pollution,Inc., supra, 220 Conn. 545. Even where the minutes of an agency proceeding may contain comments by individual agency members, made prior to the agency's vote, it is inappropriate for a reviewing court to attempt to glean from this source a formal, collective statement representing the basis for the group's action, as is contemplated by § 8-7. Protect Hamden/NorthHaven from Excessive Traffic Pollution, Inc., supra, 220 Conn. 546
n. 15. Such statements of individual views still require the court to be "governed by the well settled principle of judicial review of zoning decisions that where the [agency] has failed to state its reasons, the court is obligated to search the record for a basis for its action." Id.
The minutes of March 12, 1991, reflect that the board members had inspected the Mercieris' property and the construction in progress. Minutes of March 12, 1991, p. 1. The Commissioners reported as follows. Commissioner Bouvier "felt the addition was more than just an in-law apartment." Id. Commissioner Brzozowski agreed with Commissioner Bouvier. Id. Commissioner Ward commented that the property appears to have two dwellings on the same lot. Id. Commissioner Morton was in agreement with Commissioners Bouvier and Brzozowski. Id., p. 2. Commissioner Rafaniello "felt the addition was a structure of considerable size with everything required to support an additional family and that it did not comply with the R-25 zone which refers to single-family residences, low density area." Id. Chairman Lanosa commented upon Article 7.B.1 and Article 7.B.12 of the "old regulations," and opined that he "was in agreement with the ZEO in issuing the cease-and-desist order." Id.
In this case, the board has failed to fully and fairly present any record of the basis for its denial of the Mercieris' appeal. The court has thoroughly reviewed the record, as noted above, and finds that no collective reasons have been presented for the court's consideration or review, as was contemplated by § 8-7. The Minutes of March 12, 1991 set forth comments from the individual board members, some of which indicate support for other members' opinions. These comments are followed by a motion CT Page 1572 to deny the Mercieris' appeal of the cease and desist order issued in February of 1991 "in accordance with the information received," and a bald, conclusory statement of the vote in support of the motion.[24] Minutes of March 12, 1991, p. 2.
The court finds that neither the minutes of March 5, 1991 nor those of March 12, 1991 contain any statement or conclusion that could be considered a collective assertion of the basis for the board's action in denying the Mercieris' appeal. Notwithstanding the fact that Commissioner Rafaniello and Lanosa reference specific zoning provisions, the board as a whole does not indicate which regulations, if any, were the subject of a violation by the Mercieris' construction. The minutes of March 5, 1991, taken together with the minutes of March 12, 1991, fail to offer any reliable criteria from which the court reasonably could infer the basis of the board's action.
Notwithstanding these defects in form and substance, however, our courts have held consistently that a zoning board's failure to publish the basis for its decision will not independently cause an adverse effect upon its position on appeal. Welch v.Zoning Board of Appeals, supra, 158 Conn. 214. See ProtectHamden/North Conn. Haven from Excessive Traffic Pollution,Inc., supra, 220 Conn. 544-545; Ghent v. Planning Commission,219 Conn. 511, 515-516 (1991); TCR New Canaan, Inc. v. Planning Zoning Commission of the Town of Trumbull, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 389353 (April 5, 1992). Therefore, the court finds that the board's failure to comply with the requisites of § 8-7, in and of itself, neither brings fatal prejudice to the defendant, nor does it provide an effective independent foundation for the relief requested here by the plaintiffs.
 V
The plaintiffs claim that the defendant zoning board of appeals acted illegally, arbitrarily and in abuse of its discretion in that the denial of the plaintiffs' appeal was not in accord with the zoning regulations of the City of Bristol. As stated, the plaintiffs bear the burden of showing that the board acted illegally, arbitrarily, and in abuse of its discretion or with disregard for the evidence. Bloom v. Zoning Board ofAppeals, supra, 233 Conn. 206; Welch v. Zoning Board of Appeals,
supra, 158 Conn. 216. The court finds that the plaintiffs have sustained their burden at law, and accordingly finds this issue CT Page 1573 in their favor.
Connecticut courts have long acknowledged that the decision of a zoning authority must not be disturbed "unless the party aggrieved . . . establishes that the [authority] acted arbitrarily or illegally." Burnham v. Planning ZoningCommission, 189 Conn. 261, 266 (1983). Accord, Spectrum ofConnecticut, Inc. v. Planning Zoning Commission, 13 Conn. App. 159,164 (1988); Gagnon v. Municipal Planning Commission,10 Conn. App. 54, 56-57 (1987). See, Primerica v. Planning Zoning Commission, 211 Conn. 85, 96 (1989). A trial court has no authority to weigh evidence and determine issues of fact presented to a zoning board, and may not substitute its decision for that of the local authority, where the authority has rendered a fair and reasonable judgment, after a full hearing of the issues. Baron v. Planning and Zoning Commission of the Town ofHaddam, 22 Conn. App. 255, 257 (1990); Horn v. Zoning Board ofAppeals, 18 Conn. App. 674, 676-77 (1989). The trial court may, however, review the reasonableness of the findings made by the zoning authority, as are supported by facts discernible in the record. Daughters of St. Paul, Inc. v. Zoning Board of Appeals,17 Conn. App. 53, 68 (1988).
"The question of whether a particular statute or regulation applies to a given set of facts is a question of statutory interpretation. . . . Although the position of the municipal land use agency is entitled to some deference . . . the interpretation of provisions in the ordinance is nevertheless a question of law for the court. . . . The court is not bound by the legal interpretation of the ordinance by the town. . . . Rather, the court determines legislative intent from the language used in the regulations. . . .' We interpret an enactment to find the expressed intent of the legislative body from the language it used to manifest that intent. . . . Zoning regulations, as they are in derogation of common law property rights, cannot be construed to include or exclude by implication what is not clearly within their express terms' . . . The words used in zoning ordinances are to be interpreted according to their usual and natural meaning and the regulations should not be extended, by implication, beyond their expressed terms." (Internal and external citations omitted: comment omitted.) Coppola v. ZoningBoard of Appeals, 23 Conn. App. 636, 640-41 (1990).
General Statutes § 8-2h, effective October 1, 1989, provides that an application that is in conformance with CT Page 1574 applicable zoning regulations at the time of its filing cannot be disapproved for its failure to comply with a subsequent change in the zoning regulations. In this case, the defendant based its original revocation of the plaintiffs' building permit and zoning certificate upon regulations made effective on December 21, 1990, approximately two weeks following the issuance of the permit and certificate. Subsequently, the defendant amended the basis for the revocation, citing regulations effective February 1, 1981. In their briefs and at oral argument the parties properly presented references to the earlier-enacted regulations for consideration by the court. Accordingly, this memorandum will address these regulations, without more.
 A
The following regulation was brought before the board on March 5, 1991, to be considered as the basis for the zoning enforcement officer's issuance of the cease and desist order:
Article Seven.D.12: Article Seven of the defendant's zoning regulations effective February 1, 1981 through December 19, 1990, entitled "Single Family Residence Zones", applies to homes contained within zone Residence 25 (R-25). This article contains the following language in Article Seven.D.: "Uses Allowed With Special Permit: granted by Zoning Commission (Public Hearing Required). Article Seven.D.12. of that regulation provides: "In the R-10 and R-15 zones, conversion of existing dwelling to multi-family use, provided the living floor area is not increased by more than 20%, and provided further that all stairways are within the building walls and changes to the exterior do not detract from the residential character of the building."
Additional relevant provisions of the Zoning Regulations for the City of Bristol, Effective Date: February 1, 1981, are set forth below.
Article Seven.C., entitled "Prohibited Uses", states that: "All uses not specifically permitted or permitted by special permit are prohibited unless specifically permitted elsewhere in these regulations."
Article Four of the regulations provides Rules and Definitions which are applicable to subsequent provisions. Pertinent definitions include the following: CT Page 1575
"[B.] 14. Dwelling A building used or designed for residential occupancy by not more than two families."
"[B.] 15. Dwelling Attached A dwelling unit separated from other swelling units in the same building by a continuous vertical party wall, without openings except for utilities, which walls extend from basement or cellar to roof."
"[B.] 18. Family A group of persons related by blood or marriage. or not more than seven (7) persons living and cooking together as a single housekeeping unit, including domestic help, boarders, or roomers, the keeping of up to six children as a daytime babysitting service, shall be permitted under this definition of "Family".
"[B.] 52. Special Permit A building or use allowable under specified conditions requiring hearing and approval by the Zoning Commission (See Article 12, Section F)."
Article Five, entitled "General Provisions", provides the following subsection to Section B, "Minimum Floor Area Requirements" (Emphasis added.): "[B.] 3. Conversion of existing dwelling to multi-family uses:
efficiency unit (no separate bedroom) 450 sq. ft.
1 bedroom unit (3 rooms max.) 575 sq. ft.
2 bedroom unit (4 rooms max.) 725 sq. ft.
 Each additional room except bath 150 sq. ft. additions".
"[B.] 4. Requires minimum living floor areas shall be for the exclusive use of one individual or family within the perimeter of the dwelling unit, and shall not include outside storage areas, balconies, open or enclosed porches, and stairs, or other areas used in common."
 B
As noted in part IV, the record in this case contains no collective basis for the board's denial of the Mercieris' appeal. Accordingly, "the trial court has searched the record for a basis for the board's decision." Bloom v. Zoning Board of Appeals,
CT Page 1576 supra, 233 Conn. 208; DeBeradinis v. Zoning Commission, supra,228 Conn. 199 n. 7; Project Hamden/North Haven v. Planning andZoning Commission of the Town of Hamden, supra, 220 Conn. 545. The court has reviewed in detail the submissions of plot plans and blueprints, photographs, regulations effective in 1981 and 1990, the Minutes of the hearings held before the board on March 5 and March 12, 1991, and all other exhibits presented with the record.
This review of the record affirms the court's conclusion that it presents no: collective statement from the board establishing that they based their ruling upon a determination that the plaintiffs had failed to comply with Article Seven.D. 12 or with any other provision of the regulations. There was no evidence presented with the record from which the court could conclude that the board determined that the plaintiffs had varied their construction from those plans that were approved by the City's agents on November 17, 1990.[25] There was no evidence presented with the record from which the court could conclude that the board determined the plaintiffs were attempting to construct the addition to house more than one family, that it constituted a structure requiring procurement of a special permit or variance, that it constituted an attached dwelling, or that it fell below the minimum or maximum amount of appropriate square footage for such an edifice. In sum, after a full review of the Return of Record, the court is unable to find any basis for determining that the board had, in fact, reached the conclusion that Article 7.D.12. has specific application to the facts of this case. The record fails to provide a basis for effective review of the board's actions.
Under these circumstances, the court must rely on the principles of A. P. W. Holding Corp. v. Zoning Board; 167 Conn. 186-87, 188-89; discussed in part IV. Here, as "the record of the proceedings before the board reveals no adequate evidential basis for its action, the appeal may be sustained." Id. Given the absence of information contained in the record, in violation of General Statute § 8-7, and given the plaintiffs' meritorious claim that they are entitled to the application of the principles of equitable estoppel in this case, the court finds the present issue, as well, in favor of the plaintiffs.
 VI
The plaintiffs claim that the defendant zoning board of CT Page 1577 appeals acted illegally, arbitrarily and in abuse of its discretion in that the denial was contrary to the evidence presented at the defendant zoning board of appeal's hearing of the appeal. Again, it is fundamental that, the plaintiffs bear the burden of showing that the board acted illegally, arbitrarily, and in abuse of its discretion or with disregard for the evidence. Bloom v. Zoning Board of Appeals, supra, 233 Conn. 206;Welch v. Zoning Board of Appeals, supra, 158 Conn. 216. The court here finds that the plaintiffs have sustained their burden at law, and accordingly finds this issue in their favor.
In addressing this issue, the court references the legal principles and findings of fact set forth in part V, above. The court has no authority to re-try the issues of fact presented to a zoning board, where the board has rendered a fair and reasonable judgment. Baron v. Planning and Zoning Commission ofthe Town of Haddam, supra, 22 Conn. App. 257; Horn v. ZoningBoard of Appeals, supra, 18 Conn. App. 676-77. The trial court may, however, review the reasonableness of the findings made by the zoning authority, as are supported by facts discernible in the record. Daughters of St. Paul, Inc. v. Zoning Board ofAppeals, 17 Conn. App. 53, 68 (1988).
As noted in part IV and part V in this case, the record is devoid of any information specifying the findings made by the zoning authority. As such, the court is effectively precluded from reviewing the reasonableness of the board's findings, or of the basis for its denial of the plaintiffs' appeal. Such preclusion is contrary to the intentions of cases such as Baronv. Planning and Zoning Commission of the Town of Haddam, supra,25 Conn. App. 255; and Daughters of St. Paul, Inc. v. ZoningBoard of Appeals, supra, 17 Conn. App. 53; cited above. In this case, the defendant accepted the obligation of submitting the Return of Record, as was imposed upon it by General Statutes § 8-8(i), effective in 1991. However, as the record in the present case has effectively eradicated the court's opportunity to review the basis of the board's decision, the defendant cannot fairly be permitted to benefit from this occurrence. Accordingly, this issue, as well, is found in favor of the plaintiffs.
 VII
The defendant's first special defense claims that the court lacks subject matter jurisdiction because the plaintiffs' amended appeal was served well past the statutory appeal period CT Page 1578 prescribed by General Statutes § 8-7 for appeal of the cease and desist order. The court finds that is has effective jurisdiction over the appeal, and therefore finds this issue in favor of the plaintiff.
"`Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . Jurisdiction invokes the power in a court to hear and determine the cause of action presented to it and its source is the constitutional and statutory provisions by which it is created.'" (Citations omitted.) State v. Piorkowski, supra, 258.
General Statutes § 8-7, effective in 1991, provides in pertinent part that "An appeal may be taken to the zoning board of appeals by any person aggrieved or by any officer, department, board or bureau of any municipality aggrieved and shall be taken within such time as is prescribed by a rule adopted by said board, or, if no such rule is adopted by the board, within thirty days, by filing with the zoning commission or the officer from whom the appeal has been taken and with said board a notice of appeal specifying the grounds thereof."[26] This section is effectively directed toward appeals brought to the zoning board of appeals, not to the superior court, which was the forum to which the plaintiffs' amended complaint was brought under date of August 22, 1991, and returned on August 29, 1991.
As noted in part I, appeals from the board to the Superior Court are addressed by General Statutes § 8-8, as effective in 1991. Subsection § 8-8(b), as effective in 1991, specify the time for bringing such an appeal.[27] The plaintiffs were thereby limited to a fifteen day period, following publication of the notice of the board's decision, within which to file their appeal to the Superior Court.
The record reflects, as noted, that the board issued its decision on March 12, 1991. Notice of this decision was published on March 14, 1991. Return of Record, Exhibit AA. Thereafter, on March 22, 1991, the plaintiffs caused service of their original appeal to be filed upon the defendant board through Joseph Lanosa, its chairman. Service was made upon other interested individuals and agencies on March 25, 1991, and the matter was returned to court on April 9, 1991.
Reviewing the facts of this case, then, the court finds that CT Page 1579 the defendant was served with an effective complaint on March 22, 1991, well within the fifteen day period following publication of the statutory notice on March 14, 1991. The plaintiffs submission of a subsequent complaint, which sets forth no new allegations but re-states the claims brought by the first complaint, does not infect the validity of the original service of process. See Ranav. Ritacco, 36 Conn. App. 635, 639 (1995). Accordingly, the court finds that defendant has failed to establish that it is entitled to the relief requested through its first special defense, and the court finds this issue in favor of the plaintiff.
 VIII
The defendant's second special defense asserts that the plaintiffs' original appeal was not served and returned to court in a timely manner as is required by General Statutes §52-46a. The court finds that service was and return was made properly in this matter, and therefore finds this issue in favor of the plaintiff. As the parties agree, General Statutes §52-46 establishes the time within which service of process may be made upon a party in a civil action: "Civil process, if returnable to the supreme court, shall be served at least thirty days, inclusive, before the date of the sitting of the court, and, if returnable; to the superior court, at least twelve days, inclusive, before such day." § 52-46a of the General Statutes requires that: "Process in civil actions returnable to the supreme court shall be returned to its clerk at least twenty days before the return day and, if returnable to the superior court, except process in summary process actions and petitions for paternity and support, to the clerk of such court at least six days before the return day."
The applicable facts relevant to this issue are as follows: The record and pleadings in this case establish that the board denied the Mercieris' appeal to that agency on March 12, 1991. The plaintiffs brought their appeal to the Superior Court through a writ, summons and complaint dated March 19, 1991. The Return Date specified on the complaint was April 16, 1991: the Return Date stated on the writ and summons was April 2, 1991. Service upon the defendant board, through its chairman Joseph Lanosa, was made on March 22, 1991. Service on the other requisite individuals and agencies was made on March 25, 1991. Thereafter, the matter was returned to court on April 9, 1991.
The gravamen of defendant's second special defense was CT Page 1580 previously presented to the court through its motion to dismiss dated May 22, 1991. This motion was denied by the court (Aronson, J.) at a short calendar session on August 12, 1991. On August 15, 1991, the defendant submitted a notice to the superior court, reserving its right to appeal Judge Aronson's order after resolution of the present case. Thereafter, the plaintiffs chose to amend their complaint, addressing the inconsistency of the return dates specified in the original papers, and re-served their allegations, as originally stated, upon the defendant. The plaintiffs have never withdrawn their original complaint, nor has any court taken action previously to establish that the complaint was defective or ineffective.
Under these circumstances, the court finds that the original complaint was timely served at least twelve days before the return date specified on the complaint, April 14, 1991. The defendant and the court were provided with timely and appropriate notice of the appeal, as contemplated by § 52-46 §52-46a. The court further finds that the service rendered to the defendant and its related agencies, on March 22, 1991 and March 25, 1991, was timely and effective, as contemplated by General Statutes § 8-8 (b), as effective in 1991, supra, within fifteen days of the board's decision on March 12, 1991. The defendant has failed to demonstrate any prejudice caused by the re-service of an amended complaint re-stating the original allegations, and therefore cannot prevail on this issue. Accordingly, the court finds this issue in favor of the plaintiff.
 IX
The court finds that it would be inequitable and oppressive to permit the defendant to interfere with the plaintiffs' vested rights to continue construction of the addition to their residence. Osterberg v. Seymour Zoning Board of Appeals, supra,1990 Ct. Sup. 3457-3458. The court therefore grants the plaintiffs' appeal from the decision of the defendant Zoning Board of Appeals for the City of Bristol, reverses that decision pursuant to General Statutes § 8-8(1), and remands the matter to that board for further action consistent with this opinion.
BY THE COURT,
N. Rubinow, J. CT Page 1581