VIVIAN W. HARRIS ET AL. *v.* ZONING COMMISSION
OF THE TOWN OF NEW MILFORD
(SC 16542)

Sullivan, C. J., and Norcott, Katz, Palmer and Zarella, Js.

Argued October 31, 2001—officially released February 12, 2002

*Robert A. Fuller*, with whom was *Michael J. Mannion*, for the appellants (plaintiffs).

*Thomas P. Byrne*, with whom, on the brief, was *Steven E. Byrne*, for the appellee (defendant).

*Opinion*

KATZ, J. The plaintiffs,[1] owners of large parcels of undeveloped land in the town of New Milford (town),

---

[1] The plaintiffs in this appeal are: the named plaintiff, Vivian W. Harris, and her family members, George G. Harris, George O. Harris and Janet S. Harris (collectively, the Harrises), who own land together; Susan V. Bailey, who owns land with the Harrises and also owns land individually; Carl M. Dunham, Jr.; Victor Nelson; Cordiero's Construction Company, Inc. (Cordiero); the Reimer Family Partnership (Reimer); and Nick Penachio Company, Inc. (Penachio). Each of the plaintiffs owns large parcels of

appeal[2] from the judgment of the trial court dismissing the plaintiffs' appeal from the decision of the defendant, the zoning commission of the town of New Milford (zoning commission), that amended the definition of the phrase "lot and area" in the town's zoning regulations (amendment). The amendment excluded certain types of land from the calculation of the minimum lot area required for the purposes of residential development. We affirm the judgment of the trial court dismissing the plaintiffs' appeal.

The following facts and procedural history are undisputed. On October 29, 1997, the town's planning commission adopted a "Plan of Conservation and Development" (plan). The purpose of the plan was to achieve "a careful blend of [the town's] small town heritage and natural resources with an improved quality of new development that incorporates and protects these resources" as the town "grows and drifts away from its traditional agricultural base . . . ." The plan suggested achieving this balance between conservation and development, in part, by regulating for appropriate residential lot sizes and slopes in order to ensure open space in subdivisions, to protect water supplies, to preserve ridgelines and vistas, and overall, "to control development in a responsible manner and encourage a respect for the environment."

In late 1999, the zoning commission proposed, and later adopted, an amendment to the definition of "lot and area" in § 015-010 of the New Milford zoning regula-

undeveloped land in the R-40, R-60 and R-80 residential zones containing wetlands and slopes with a 25 percent grade or greater, which are, therefore, subject to the exclusions set forth in the amended zoning regulation at issue in this case.

[2] Following the Appellate Court's granting of the plaintiffs' petition for certification to appeal from the judgment of the trial court, we transferred the plaintiffs' appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

tions. The amendment, which applies only to residential zones, excludes wetlands, watercourses and land with a 25 percent slope or greater from the calculation of the total horizontal area of a parcel of land for the purposes of determining whether a parcel conforms to the minimum lot area required for development.[3] The ultimate effect of the amendment on undeveloped parcels of land is a reduction of the number of potential lots for each parcel.

On December 21, 1999, the zoning commission held a duly noticed public hearing on the amendment. George Doring, the zoning commission chairman, commenced the discussion of the amendment to § 015-010 of the regulations by reading aloud letters from the planning commission opposing the adoption of the amendment.[4] Doring then read a letter from the inland wetlands commission endorsing the amendment, but also suggesting the incorporation of additional definitions of wetlands and watercourses. Following Doring's remarks, C. Brooks Temple, the zoning commission's vice chairman who authored the amendment, made several statements explaining the amendment and comparing its effects to

[3] The amendment provides: "Lot and Area: The total horizontal area within the lot lines. In determining compliance with the minimum lot area requirements of these regulations, areas consisting of wetlands, watercourses, *natural* slopes in excess of 25%, portions of the lot less than 25 feet wide, or the private right-of-way leading to the rear of the lot shall not be included." (Emphasis in original.) See New Milford Zoning Regs., § 015-010.

[4] In a letter dated November 12, 1999, the planning commission informed the zoning commission that it had voted unanimously to recommend that the zoning commission not adopt the amendment. In a letter dated December 17, 1999, the planning commission listed several concerns it had with the amendment, including its opinion that the amendment did not conform to the plan. Although the record reveals that the zoning commission subsequently addressed many of the planning commission's concerns, we note that it was not obligated to do so. General Statutes § 8-2 (a) provides in relevant part that the zoning commission "shall consider the plan of conservation and development," but that it is not bound by the plan. *Lathrop* v. *Planning & Zoning Commission,* 164 Conn. 215, 223, 319 A.2d 376 (1973) (development plan is merely advisory).

the objectives contained in the planning commission's plan. Thereafter, the zoning commission opened the floor to comments from members of the public, most of whom made statements opposing the adoption of the amendment.[5]

The zoning commission held a special meeting on February 3, 2000, at which time it voted on whether to adopt the amendment to its zoning regulations. Prior to the vote, Doring stated his support for the amendment as explained by Temple. Temple then reiterated his remarks from the public hearing comparing the amendment to the planning commission's plan. Following a brief discussion, the zoning commission voted in favor of adopting the amendment by a margin of four to one. On February 11, 2000, the zoning commission published notice of its decision. The notice merely provided that the zoning commission had voted to amend § 015-010 of the New Milford zoning regulations and did not include reasons for the decision.

On February 23, 2000, the plaintiffs appealed from the zoning commission's decision to the Superior Court, pursuant to General Statutes § 8-9.[6] The plaintiffs first alleged that, pursuant to General Statutes § 8-8,[7] they were statutorily aggrieved by the zoning commission's decision because they owned land that was subject to

---

[5] The zoning commission officially closed the public hearing after an additional, brief public hearing on January 11, 2000, which consisted entirely of Doring reading aloud written correspondence either endorsing or opposing the amendment.

[6] General Statutes § 8-9 provides: "Appeals from zoning commissions and planning and zoning commissions may be taken to the Superior Court and, upon certification for review, to the Appellate Court in the manner provided in section 8-8."

[7] General Statutes § 8-8 (a) (1) provides in relevant part: "In the case of a decision by a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, 'aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board."

the amendment. The plaintiffs further alleged that they were also classically aggrieved because the amendment affects only specific parcels in the town and the plaintiffs own parcels that are affected adversely. The plaintiffs then articulated three claims. First, they claimed that Temple's remarks constituted a statement of purpose on behalf of the zoning commission for its decision adopting the amendment, namely, to conform the zoning regulations to the plan, and that this purpose was not supported by substantial evidence in the record. Second, the plaintiffs contended that the amendment lacked a rational basis and was, therefore, not reasonably related to the legitimate purposes of zoning set forth in General Statutes § 8-2 (a).[8] Third, they claimed that the amendment violated the uniformity requirement in § 8-2 (a)[9] because it required different minimum lot sizes depending upon whether a lot had wetlands, watercourses and slopes greater than 25 percent, and because its terms were vague and, therefore, subject to inconsistent application.

---

[8] General Statutes § 8-2 (a), which grants the zoning commission the authority to regulate, provides in relevant part: "Such regulations shall be designed to lessen congestion in the streets; to secure safety from fire, panic, flood and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population and to facilitate the adequate provision for transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality. . . ."

[9] General Statutes § 8-2 (a) provides in relevant part: "The zoning commission of each city, town or borough is authorized to regulate, within the limits of such municipality, the height, number of stories and size of buildings and other structures; the percentage of the area of the lot that may be occupied; the size of yards, courts and other open spaces; the density of population and the location and use of buildings, structures and land for trade, industry, residence or other purposes . . . . All such regulations shall be uniform for each class or kind of buildings, structures or use of land throughout each district, but the regulations in one district may differ from those in another district . . . ."

The trial court, *DiPentima, J.*, first determined that the plaintiffs were statutorily aggrieved pursuant to § 8-8, and, therefore, had standing to appeal from the zoning commission's decision. The trial court did not address the plaintiffs' allegation of classical aggrievement until after the plaintiffs filed a motion for articulation. Turning to the merits, the trial court rejected each of the plaintiffs' claims. First, the trial court concluded that Temple's remarks *did not* constitute a statement of purpose on behalf of the zoning commission, and, accordingly, that the trial court was required to search the record for a basis upon which to uphold the zoning commission's decision. After searching the record, the trial court concluded that there was substantial evidence that "the amendment [was] supported by the articulated goals and recommendations of the plan as well as the testimony of individuals at the hearing." The trial court then determined that the amendment applied consistently to all parcels throughout residential zones and that its terms were reasonably precise to provide fair notice to applicants of their obligations under the amendment. The trial court concluded, therefore, that the amendment satisfied the uniformity requirement set forth in § 8-2 (a). Finally, the trial court determined that the amendment was reasonably related to the balancing of development and conservation, which is related to the legitimate purpose of zoning for the public welfare, and that the amendment, therefore, did not lack a rational basis. Accordingly, the trial court dismissed the plaintiffs' appeal.

Thereafter, the trial court granted a motion made by the plaintiffs for articulation on the issue of aggrievement. In the articulation, the trial court stated that, in addition to being statutorily aggrieved, the plaintiffs were classically aggrieved by the zoning commission's decision. This appeal followed.

On appeal, the plaintiffs claim that the trial court improperly concluded that: (1) the zoning commission had failed to make an official statement of purpose for its decision and that the trial court was required, therefore, to search the record for *any* basis supporting the zoning commission's decision; (2) there was a rational basis for the decision of the zoning commission; and (3) the amended regulation satisfied the uniformity requirement set forth in § 8-2 (a). As alternative grounds for affirming the trial court's judgment of dismissal, the zoning commission contends that the plaintiffs were neither classically nor statutorily aggrieved by the decision of the zoning commission, and therefore, the trial court did not have subject matter jurisdiction to hear the plaintiffs' appeal. We affirm the judgment of the trial court dismissing the plaintiffs' appeal.

I

We necessarily begin our review of this appeal with a consideration of the zoning commission's claim that the trial court improperly concluded that the plaintiffs were classically and statutorily aggrieved. It is well settled that "[p]leading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an administrative appeal. *Bakelaar* v. *West Haven*, 193 Conn. 59, 65, 475 A.2d 283 (1984). It is [therefore] fundamental that, in order to have standing to bring an administrative appeal, a person must be aggrieved. *Connecticut Business & Industry Assn., Inc.* v. *Commission on Hospitals & Health Care*, 214 Conn. 726, 729, 573 A.2d 736 (1990) . . . . *Beckish* v. *Manafort*, 175 Conn. 415, 419, 399 A.2d 1274 (1978). Standing [however] is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights

of others are forged in hot controversy, with each view fairly and vigorously represented." (Internal quotation marks omitted.) *Office of Consumer Counsel* v. *Dept. of Public Utility Control*, 234 Conn. 624, 637, 662 A.2d 1251 (1995).

Aggrievement presents a question of fact for the trial court and the party alleging aggrievement bears the burden of proving it. See, e.g., *Med-Trans of Connecticut, Inc.* v. *Dept. of Public Health & Addiction Services*, 242 Conn. 152, 159, 699 A.2d 142 (1997); *Bakelaar* v. *West Haven*, supra, 193 Conn. 65. We do not disturb the trial court's conclusions on appeal unless those conclusions are unsupported by the subordinate facts or otherwise violate law, logic or reason. *Kelly* v. *Freedom of Information Commission*, 221 Conn. 300, 308, 603 A.2d 1131 (1992); *Winchester Woods Associates* v. *Planning & Zoning Commission*, 219 Conn. 303, 309, 592 A.2d 953 (1991).

We first address the zoning commission's claim with respect to classical aggrievement. "The fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all the members of the community as a whole. Second, the party claiming aggrievement must successfully establish that the specific personal and legal interest has been specially and injuriously affected by the decision. . . . *Cannavo Enterprises, Inc.* v. *Burns*, 194 Conn. 43, 47, 478 A.2d 601 (1984); *Bakelaar* v. *West Haven*, [supra, 193 Conn. 65]. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected. . . . *Light Rigging Co.* v. *Dept. of Public Utility Control*, [219 Conn. 168, 173, 592 A.2d 386 (1991)]." (Citation omitted; internal quotation marks

omitted.) *Office of Consumer Counsel* v. *Dept. of Public Utility Control*, supra, 234 Conn. 638.

In the present case, the trial court made the following findings of fact, which are relevant to the issue of classical aggrievement. The total amount of land in the town containing inland wetlands and watercourses, including land already developed, is 5378 acres. Such land comprises only 13 percent of the town's total acreage. The total amount of land containing slopes with a 25 percent grade or higher, including land already developed, is 8987 acres, which comprises only 21.5 percent of the town's total acreage. Each plaintiff owns undeveloped land containing both wetlands and slopes of 25 percent or greater in the town's R-40, R-60 or R-80 residential zones.[10] The effect of the amendment on the properties owned by each of the plaintiffs is a reduction of the number of potential lots that are developable.[11] Thomas Pilla, an experienced developer in the town, testified that each lot in the town ranges in value from $85,000

[10] The property owned by the plaintiffs; see footnote 1 of this opinion; is as follows: the Harrises collectively own approximately 140 acres in the R-60 residential zone, with 10.87 acres of wetlands and 4 acres with slopes of 25 percent grade or greater; Dunham owns more than 700 acres in the R-40 and R-80 residential zones, of which 127.36 acres are wetlands and 298.85 acres have slopes of 25 percent grade or greater; Nelson owns 204 acres located in the R-40 and R-80 residential zones that contain 7.1 acres of wetlands and 79.75 acres with slopes of 25 percent grade or greater; Cordiero owns 138.28 acres of land located in the R-80 residential zone that contain 9.1 acres of wetlands and 46.6 acres with slopes of 25 percent grade or greater; Reimer owns 333 acres of land located in the R-60 and R-80 residential zones, with 76.5 acres of wetlands and 14.2 acres with slopes of 25 percent grade or greater; and Penachio owns 111.7 acres located in the R-60 and R-80 residential zones, with 10.8 acres of wetlands and with 11.4 acres with slopes of 25 percent grade or greater.

[11] As a result of the amendment, the property owned together by the Harrises is reduced from 74 to 62 potential lots; Dunham's property is reduced from 181 to 102 potential lots; Nelson's property is reduced from 72 to 41 potential lots; Cordiero's property is reduced from 29 to 17 lots; Reimer's property is reduced from 132 to 103 potential lots; and Penachio's property is reduced from 40 to 30 potential lots.

to $100,000. Based on these findings, the trial court concluded that "[b]ecause the plaintiffs own property affected by the amended regulations and those regulations affect a limited number of acres, the court finds that the plaintiffs have established an identifiable legal interest that the community as a whole does not share."

On appeal, neither party contests the trial court's factual findings. Rather, the parties disagree as to whether the trial court properly concluded that the plaintiffs had established a "specific, personal and legal interest" in the zoning commission's decision to adopt the amendment in order to establish aggrievement. *Lewis* v. *Planning & Zoning Commission*, 62 Conn. App. 284, 288, 771 A.2d 167 (2001). The zoning commission argues that the amendment, by its terms, applies to the town as a whole, and, therefore, the trial court could not have concluded reasonably that the plaintiffs possessed the required interest in the zoning commission's decision that the community as a whole did not share. Thus, the zoning commission claims, the plaintiffs failed to meet their burden in establishing the first prong of the test for classical aggrievement.

In response, the plaintiffs concede that the amendment's terms are inclusive of each parcel of land in the town, regardless of its size, its location or whether it can be subdivided. The plaintiffs contend, however, that they introduced sufficient evidence from which the trial court reasonably could have determined that the amendment, in practice, actually affects only a limited number of acres in the town, and that the plaintiffs are all owners of adversely affected land. Therefore, the plaintiffs argue, the trial court properly concluded that the plaintiffs have a specific, personal and legal interest in the commission's decision that satisfies the first prong of the test for classical aggrievement. We agree with the plaintiffs.

The precise question raised by the zoning commission is whether, as a matter of law, the plaintiffs can establish a specific personal and legal interest, as distinguished from a general interest, in a zoning amendment that applies throughout the town. We were confronted by a similar factual scenario in *Timber Trails Corp.* v. *Planning & Zoning Commission*, 222 Conn. 374, 376, 610 A.2d 617 (1992), wherein the plaintiffs appealed the decision of the defendant commission amending its regulations to increase the minimum lot area in a particular zone from 40,000 to 80,000 square feet. Although the question of aggrievement was not directly at issue, we noted in dicta that the plaintiffs had established both classical and statutory aggrievement. See id., 376 n.3, citing General Statutes § 8-8 (b) and *Fletcher* v. *Planning & Zoning Commission*, 158 Conn. 497, 502–503, 264 A.2d 566 (1969). Relying on *Timber Trails Corp.*, the Appellate Court in *Lewis* v. *Planning & Zoning Commission*, supra, 62 Conn. App. 292, held that owners of large, subdividable parcels of land had a specific personal and legal interest in the decision of the defendant commission amending the town's subdivision regulations to exclude land containing wetlands and slopes of 25 percent grade or greater in calculating the total horizontal area of property. The Appellate Court based its conclusion on the evidence before it demonstrating that, although the amendment applied, by it terms, throughout the town, most of the land in the town, in practice, was not affected, and the plaintiffs each owned land that was affected. Id.

In the present case, the trial court relied on *Lewis* for its conclusion that the plaintiffs were classically aggrieved. The zoning commission argues that the Appellate Court's decision in *Lewis* expanded the concept of classical aggrievement beyond the scope contemplated by this court.[12] Contrary to the zoning

---

[12] The zoning commission contends that this court's decision in *Sheridan* v. *Planning Board*, 159 Conn. 1, 266 A.2d 396 (1969), controls the present

commission's contention, however, we read the Appellate Court's analysis in *Lewis* to be consonant with our line of cases standing for the principle that a specific personal and legal interest in the subject matter of a zoning commission's decision that satisfies the first prong of the two part test for classical aggrievement cannot be an interest shared by the community as a whole. In establishing such a specific personal and legal interest, we can discern no meaningful difference between a zoning amendment that expressly affects only a portion of a town's land and one that does so by its application.[13] In the present case, the trial court reasonably could have concluded from the evidence presented that the amendment, in practice, affects only a limited portion of land in the town, that the plaintiffs own some of the affected land, and that the plaintiffs, therefore, have a specific personal and legal interest in the zoning commission's decision that the community as a whole does not share. Accordingly, the trial court properly concluded that the plaintiffs established the

case. *Sheridan* does not support the commission's blanket contention, however, that a landowner cannot, as a matter of law, establish a specific personal and legal interest in a zoning amendment of general application throughout a town. Rather, it stands for the proposition that a *prospective*, personal and legal interest in the subject matter of a zoning commission's decision does not satisfy the first prong of the test for classical aggrievement. We determined in *Sheridan* that the plaintiffs were not aggrieved by the amendment of the city of Stamford's zoning regulations to create a new district, based on the finding of the trial court that the creation of the new district could not affect any specific property in the city until an area was designated for the new district through the amendment to the city's zoning map, which had not yet taken place at the time that the commission amended the zoning regulations. Id., 12. Therefore, this court held that the plaintiffs were not classically aggrieved because "as a matter of law, there can be no aggrievement when the zoning regulations of a municipality are amended in such a way that no particular area or property is affected." Id.

[13] For this same reason, we disagree with the zoning commission's contention that the present case is distinguishable from *Timber Trails Corp.* v. *Planning & Zoning Commission*, supra, 222 Conn. 376, because that case involved an amendment applicable only to one zone, whereas the present case involves an amendment to a regulation affecting the entire town.

first prong of the two part test for classical aggrievement. Because the zoning commission does not contest the trial court's conclusion that the plaintiffs met their burden in establishing the second prong of the test for classical aggrievement,[14] we conclude that the trial court properly concluded that the plaintiffs were classically aggrieved by the commission's decision to adopt the zoning amendment.[15]

## II

Having concluded that the plaintiffs had standing to appeal to the Superior Court, we now turn to the merits of the plaintiffs' appeal. The plaintiffs first claim that the trial court improperly concluded that the zoning commission had failed to state a reason for its decision. Specifically, the plaintiffs contend that remarks made by Temple, both at the public hearing and at the zoning commission's special meeting, constituted an official statement on behalf of the zoning commission that its sole reason for proposing and adopting the amendment was to conform to the plan. The plaintiffs claim, therefore, that the trial court was required to search the record for substantial evidence supporting the zoning commission's sole stated purpose, and that had the trial court done so, it properly would have concluded that the record did not support that purpose. We disagree.

The proper, limited scope of judicial review of a decision of a local zoning commission when it acts in a legislative capacity by amending zoning regulations is

[14] The trial court concluded that the plaintiffs satisfied the second prong because their interests were affected adversely by the zoning commission's decision based on its findings that the amended regulation reduced the number of potentially developable lots on each plaintiff's land, resulting in a significant economic loss. See footnote 11 of this opinion.

[15] Because the plaintiffs established that they were classically aggrieved by the commission's decision, and, therefore, that they had standing to appeal from that decision, we need not decide the propriety of the trial court's determination that the plaintiffs also were statutorily aggrieved.

well established. "[T]he commission, acting in a legislative capacity, [has] broad authority to adopt . . . amendments." *D & J Quarry Products, Inc.* v. *Planning & Zoning Commission*, 217 Conn. 447, 450, 585 A.2d 1227 (1991). "In such circumstances, it is not the function of the court to retry the case. Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency. The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached. *Calandro* v. *Zoning Commission*, 176 Conn. 439, 440, 408 A.2d 229 (1979)." *Primerica* v. *Planning & Zoning Commission*, 211 Conn. 85, 96, 558 A.2d 646 (1989). "Acting in such legislative capacity, the local board is free to amend its regulations whenever time, experience, and responsible planning for contemporary or future conditions reasonably indicate the need for a change. . . . The discretion of a legislative body, because of its constituted role as formulator of public policy, is much broader than that of an administrative board, which serves a quasi-judicial function. *Malafronte* v. *Planning & Zoning Board*, [155 Conn. 205, 209, 230 A.2d 606 (1967)]." (Internal quotation marks omitted.) *Arnold Bernhard & Co.* v. *Planning & Zoning Commission*, 194 Conn. 152, 164, 479 A.2d 801 (1984). "This legislative discretion is wide and liberal, and must not be disturbed by the courts unless the party aggrieved by that decision establishes that the commission acted arbitrarily or illegally. *Burnham* v. *Planning & Zoning Commission*, 189 Conn. 261, 266, 455 A.2d 339 (1983)." (Internal quotation marks omitted.) *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission*, 220 Conn. 527, 543, 600 A.2d 757 (1991) (*Protect*

*Hamden/North Haven* v. *Planning & Zoning Commission*).

"Zoning must be sufficiently flexible to meet the demands of increased population and evolutionary changes in such fields as architecture, transportation, and redevelopment. *Luery* v. *Zoning Board*, 150 Conn. 136, 145, 187 A.2d 247 [1962]; *Clark* v. *Town Council*, 145 Conn. 476, 483, 144 A.2d 327 [1958]. The responsibility for meeting these demands rests, under our law, with the reasoned discretion of each municipality acting through its duly authorized zoning commission. Courts will not interfere with these local legislative decisions unless the action taken is clearly contrary to law or in abuse of discretion." *Malafronte* v. *Planning & Zoning Board*, supra, 155 Conn. 209–10. "[T]he test of the action of the commission is twofold: (1) The zone change must be in accord with a comprehensive plan, General Statutes § 8-2, *Summ* v. *Zoning Commission*, 150 Conn. 79, 87, 186 A.2d 160 [1962], and (2) it must be reasonably related to the normal police power purposes enumerated in § 8-2 . . . ." (Internal quotation marks omitted.) *Protect Hamden/North Haven* v. *Planning & Zoning Commission*, supra, 220 Conn. 544.

A

With these principles in mind, we turn to the plaintiffs' claim that the trial court improperly concluded that Temple's remarks were not a statement of the zoning commission's purpose in proposing and adopting the amendment.

The following additional facts are necessary for our analysis of the plaintiffs' claim. At the December 21, 1999 public hearing and the February 3, 2000 special meeting of the zoning commission, Temple made similar presentations emphasizing the amendment's relationship to the plan. The transcripts of the hearings indicate that when he was introducing the amendment,

which he had authored, Temple stated: "[T]he [z]oning [c]ommission has been working hard to try to bring our [z]oning [r]egulations into harmony with [the plan] which the town seems to have embraced. [T]hat's been our mission and . . . we've been dealing with lots of complicated formulas regarding ridgeline development and restrictions . . . and we've been listening to arguments about four acre zoning . . . in various parts of New Milford. . . . [I]t [occurred] to me there might be a simpler way to accomplish some of these missions . . . my suggestions don't come far away from the proposals of the [plan]." Temple also highlighted specific similarities between the plan and the amendment stating: "The [plan] provides . . . that there are 'approximately 25,731 acres of land classified as vacant, agricultural or single-family residences on ten acre or larger parcels. To calculate buildable area within these 25,731 acres, land containing steep slopes (more than 15 percent grade), rock outcrops and major wetlands was deducted from the total.' The [plan] . . . recommends that '[i]n residential areas of the town, particularly the more rural parts, there is a need for appropriate lot sizes and slope regulations to control development in a responsible manner and encourage a respect for the environment.' Further, the [plan] recommends the following . . . (1) a 'buildable area' definition could be added to zoning to identify areas with no wetlands or steep slopes (over 25 percent); (2) only 50 percent of wetlands, floodplains or steep slopes (over 25 percent) should be attributable to satisfy minimum lot area requirement. There seems to be a little conflict between a minor area, they call steep slopes 15 percent or greater, in [an]other area they call it 25 percent or greater. [It is] generally accepted throughout our [p]lanning and [z]oning regulations that 25 percent or greater is steep slopes, that's why I happen to use that formula. It seems that it would be a lot easier to enforce these

kind[s] of regulations and there are more complicated formulas to . . . restrict the development of ridgelines; to add four acre zoning arbitrarily to this section of town or that section of town. It seems to me by doing a regulation such as this, we are identifying as best we can, [the] difficult lots and saying these . . . lots . . . ought to be bigger . . . . [W]e are not suggesting it can't be developed, of course, they ought to use it . . . . It only means that it certainly doesn't affect [i]ndustrial land and it [a]ffects residential, it probably won't [a]ffect any land in the more populated areas. It probably [affects outlying] areas so . . . that was the purpose of it."

The minutes of the special meeting of the zoning commission disclose that Temple provided a similar explanation of the amendment there. He additionally stated that he "concurred" with the planning commission that residential development should be in balance with commercial and industrial development, and that he had "referenced" the plan when he had calculated lot area. Finally, he summarized "that [the amendment] did indeed conform to the ideas in the [plan]."

The plaintiffs argued before the trial court, as they do again before this court, that Temple's explanation of the amendment constituted a statement by the zoning commission that its purpose in adopting the amendment was to conform the town's zoning regulations to the plan. Therefore, the plaintiffs contended that the trial court should have limited its determination to a review of the record for substantial evidence supporting that purpose. The trial court determined, however, that Temple's remarks did not constitute a statement on behalf of the zoning commission as to its reason for adopting the amendment, and accordingly, the court reviewed the record for any legitimate basis supporting the zoning commission's decision. The trial court concluded that "the amendment is supported by the articulated goals

and recommendations of the plan as well as the testimony of individuals at the hearing."

On appeal to this court, the plaintiffs claim that the trial court improperly searched the record for any basis supporting the zoning commission's decision. In contrast, the zoning commission claims that Temple's remarks were not sufficient to limit the court's review to substantial evidence supporting those remarks.

We previously have articulated the proper scope of review of the reasons provided by a commission for its decisions. When a zoning agency has stated its reasons for its actions, a court should not reach beyond those stated purposes to search the record for other reasons supporting the commission's decision. *DeMaria* v. *Planning & Zoning Commission*, 159 Conn. 534, 541, 271 A.2d 105 (1970). Rather, "the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations." (Internal quotation marks omitted.) *Protect Hamden/North Haven* v. *Planning & Zoning Commission*, supra, 220 Conn. 544. "The principle that a court should confine its review to the reasons given by a zoning agency . . . applies [only] where the agency has rendered a formal, official, collective statement of reasons for its action." Id. It does not apply to mere utterances of individual members of the agency. Id.

A review of the line of cases addressing the distinction between utterances of individual members of an agency and "a formal, official, collective statement of reasons for [an agency's] action"; id.; reveals that cases in which we have held that the agency rendered a formal, official, collective statement involve circumstances wherein the agency couples its communication of its ultimate decision with express reasons behind

that decision. See, e.g., *Caserta* v. *Zoning Board of Appeals*, 226 Conn. 80, 86, 91 n.9, 626 A.2d 744 (1993) (letter from board to plaintiff's attorney upholding revocation of plaintiff's zoning permit and listing reasons for decision constituted statement of basis for decision); *First Hartford Realty Corp.* v. *Plan & Zoning Commission*, 165 Conn. 533, 537, 338 A.2d 490 (1973) (assigned reasons accompanying decision to change zoning classification constituted statement of basis for decision); *DeMaria* v. *Planning & Zoning Commission*, supra, 159 Conn. 540 (commission's records disclosing denial of plaintiff's application and two "reasons for den[ial]" constituted statement of basis for decision); cf. *Bloom* v. *Zoning Board of Appeals*, 233 Conn. 198, 208–209, 209 n.12, 658 A.2d 559 (1995) (board's discussion of reasons supporting variance before vote and chairman's remarks in moving to grant variance did not constitute collective statement of basis for board's decision granting variance); *Connecticut Resources Recovery Authority* v. *Planning & Zoning Commission*, 225 Conn. 731, 740, 743, 626 A.2d 705 (1993) (no collective statement of basis for agency's decision upholding zoning officer's dismissal of plaintiff's application despite availability of zoning officer's reasons for denial); *Protect Hamden/North Haven* v. *Planning & Zoning Commission*, supra, 220 Conn. 544, 545 n.15 (court should not glean collective statement from inconsistent disclosures by each member of personal reasons for vote both prior and subsequent to vote); *Welch* v. *Zoning Board of Appeals*, 158 Conn. 208, 214, 257 A.2d 795 (1969) (no official statement of basis for board's decision where board failed to include reasons with formal notice of decision).

In the present case, the zoning commission did not state reasons for its decision adopting the amendment in its publication of notice of the decision. Furthermore, the minutes from the February 3, 2000 special meeting,

at which the zoning commission voted to adopt the amendment, do not reveal an action by the zoning commission at any time during the meeting to articulate the reasons for its decision. Nor do the minutes reveal that the zoning commission members individually stated consistent reasons behind their votes, either prior or subsequent to the vote, from which we could infer a collective reason. Indeed, the minutes reveal that no member stated reasons for his or her individual vote. We conclude, therefore, that without more, Temple's explanation that he took the plan into consideration in drafting the amendment does not amount to the type of "formal, official, collective statement" contemplated in our decisions in this area. See *Protect Hamden/North Haven* v. *Planning & Zoning Commission*, supra, 220 Conn. 544.

The plaintiffs' contend, however, that Temple's remarks do constitute a collective statement of the zoning commission's purpose because none of the other members of the zoning commission disagreed with his remarks. The minutes of the February 3, 2000 meeting disclose that prior to the vote, the zoning commission's members discussed several concerns with the amendment, particularly the possibility, supported by many of the members, of altering the amendment to include density factors. The subsequent margin of the vote adopting the amendment without this change, however, was four to one. In light of this discussion highlighting concerns with the amendment, and in the absence of the express reasons behind the zoning commission's ultimate vote adopting the amendment, it is unclear to us on what basis the zoning commission members ultimately decided to vote in favor of adopting the amendment. In the same vein, it is equally unclear to us that the zoning commission members' votes adopting the amendment were predicated on their agreeing with Temple's remarks. Thus, in the absence of consistent

statements of purpose by the zoning commission members, we note that "[t]he principle that a court should confine its review to the reasons given by a zoning agency does not apply to any utterances, however incomplete, by the members of the agency subsequent to their vote." Id. "Nor is it appropriate for a reviewing court to attempt to glean such a formal, collective statement from the minutes of the discussion by [the agency] members prior to the [agency's] vote." Id., 545–46 n.15.

Finally, the plaintiffs contend that Temple's remarks constituted a statement of the zoning commission's purpose because the zoning commission never collectively endorsed any other reasons for supporting its action, including numerous reasons offered by the public. It does not follow, however, that because the zoning commission did not endorse any of the reasons offered by individuals other than Temple, that it, therefore, endorsed Temple's remarks. We conclude, therefore, that the trial court properly concluded that the zoning commission had failed to articulate the purpose behind its decision to amend the regulation.

### B

In light of this conclusion, we reject the plaintiffs' contention that the trial court improperly searched the record for *any* basis supporting the zoning commission's decision. In the absence of a statement of purpose by the zoning commission for its actions, it was the obligation of the trial court, and of this court upon review of the trial court's decision, to "search the entire record to find a basis for the [zoning] commission's decision. *Parks* v. *Planning & Zoning Commission*, 178 Conn. 657, 661–62, 425 A.2d 100 (1979); see *First Hartford Realty Corporation* v. *Plan & Zoning Commission*, supra, [165 Conn.] 543." (Internal quotation marks omitted.) *Protect Hamden/North Haven* v. *Planning & Zoning Commission*, supra, 220 Conn. 544–45.

We conclude, therefore, that the trial court properly searched the entire record for a basis supporting the zoning commission's decision.

### III

We turn next to the plaintiffs' contention that the trial court improperly concluded that the zoning commission's decision adopting the amendment is reasonably related to the legitimate purposes of zoning set forth in § 8-2. See footnote 8 of this opinion. The plaintiffs claim that the amendment is not reasonably related to those purposes because there is no rational basis for the amendment's exclusion of certain types of land whereupon construction and development is allowed. We disagree.

A search of the record for a basis supporting the zoning commission's decision must uncover evidence that the decision to adopt the amendment: (1) conforms to the town's comprehensive plan;[16] and (2) is reasonably related to the police powers enumerated in § 8-2. Id., 545; *First Hartford Realty Corp.* v. *Plan & Zoning Commission*, supra, 165 Conn. 543. In discharging its obligation to search the record, the trial court first concluded that the zoning commission's decision was "supported by the articulated goals and recommendations of the plan as well as the testimony of individuals at the [public] hearing." Thereafter, based on a factual finding that "one of the goals or objectives of [the town's] land use agencies is to balance development and conservation," the trial court concluded that the zoning commission's decision to adopt the amendment is "reasonably related to the . . . legitimate goal of balancing development and conservation" pursuant to § 8-2, and that the amendment therefore, "does not lack a rational basis."

---

[16] The amendment's conformity with the town's comprehensive plan is not disputed in this appeal.

Before we review the record, we underscore that "[t]he power to determine what are the needs of a town with reference to the use of the real property located in it and to legislate in such a manner that those needs will be satisfied is, by statute, vested exclusively in the zoning commission." *Finch* v. *Montanari*, 143 Conn. 542, 545, 124 A.2d 214 (1956). "[C]ourts cannot substitute their judgment for the wide and liberal discretion vested in local zoning authorities when they have acted within their prescribed legislative powers." *First Hartford Realty Corp.* v. *Plan & Zoning Commission*, supra, 165 Conn. 540. "Courts can interfere only in those extreme cases where the action taken is unreasonable, discriminatory or arbitrary." (Internal quotation marks omitted.) *Builders Service Corp., Inc.* v. *Planning & Zoning Commission*, 208 Conn. 267, 289, 545 A.2d 530 (1988). "[T]he justification for zoning in any municipality is that it serves to promote the public health, safety, welfare and prosperity of the community." (Internal quotation marks omitted.) Id., 286. "In considering whether [a] regulation works to achieve a proper legislative object of zoning, we must examine it to see if it operates in a manner reasonably related to such a legitimate purpose of zoning." Id., 284. "Every intendment is to be made in favor of the validity of [an] ordinance and it is the duty of the court to sustain the ordinance unless its invalidity is established beyond a reasonable doubt." (Internal quotation marks omitted.) Id., 289–90.

With these principles in mind, we turn to the question at hand, namely, whether the record supports a reasonable relationship between the amendment and any legitimate purpose of zoning. We consider first the conclusion of the trial court that the amendment is reasonably related to balancing conservation and development.

Our search of the record reveals that the zoning commission's amendment creates a significant obstacle to development by requiring a larger minimum lot area before development can commence, despite the fact that it does not, on its face, limit construction on wetlands, watercourses and slopes in excess of 25 percent. Pilla, an experienced developer, explained at the public hearing that, although the amendment contains no provisions limiting either the location or the extent of development once development is permitted, a lot has to be larger, pursuant to the amended regulation, before such permission to develop will be granted. Indeed, the transcript of that hearing further discloses Temple's remarks that the amendment was not intended as much to suggest that the land "can't be developed," as to ensure that "[i]t ought to be a little bigger. . . ." Moreover, Russell T. Posthauer, Jr., a professional engineer, testified for the plaintiffs that the ultimate effect of the amendment was to reduce the number of potential lots for each parcel of land subject to the amendment. Thus, when proving that the amendment had aggrieved them by reducing the number of their potential lots, the plaintiffs necessarily conceded that the amendment reduces development.

Moreover, with respect to the amendment's relationship to conservation, our search of the record leads us to conclude that the zoning commission reasonably could have believed that conservation would be a corollary effect of the amendment's existence as a significant obstacle to development via the exclusion of wetlands, watercourses and slopes greater than 25 percent. Although nothing in the amendment specifically limits construction on wetlands and watercourses and in slopes in excess of 25 percent, approval for development is contingent upon meeting the minimum lot area requirement without the inclusion of these areas in the calculation. Furthermore, although Pilla testified that

construction is permitted on wetlands and slopes greater than 25 percent pending approval from the inland wetlands commission and the town's health officials, respectively, it is less likely that construction will occur on these excluded areas given that, pursuant to the zoning commission's amendment, the portion of lots that contain these types of land will now constitute a smaller percentage of a lot's total land.[17] We note that the zoning commission could have limited development and encouraged conservation through more direct means, such as by simply increasing the minimum lot area required for lot development. "[C]ourts [however] cannot substitute their judgment for the wide and liberal discretion vested in local zoning authorities when they have acted within their prescribed . . . powers"; *First Hartford Realty Corp.* v. *Plan & Zoning Commission*, supra, 165 Conn. 540; "to determine what are the needs of [the] town . . . and to legislate in such a manner that those needs will be satisfied . . . ." *Finch* v. *Montanari*, supra, 143 Conn. 545. Therefore, we conclude that the amendment is reasonably related to balancing development and conservation, which is a legitimate purpose of zoning pursuant to § 8-2. Accordingly, we conclude that the trial court properly determined from the record that the amendment has a rational basis in its reasonable relationship to the legitimate goal of balancing development and conservation.[18]

---

[17] Indeed, the plaintiffs contend that construction on the areas excluded from the amendment is unlikely because the amendment ultimately requires larger lots and only a small percentage of one and two acre lots are used for structures.

[18] The plaintiffs also claim that the amendment is not reasonably related to the legitimate goals of public health or safety. Additionally, they claim that, because the excluded areas are unlikely to be built upon because of the small percentage of one and two acre lots that are used for structures, there is no rational basis for the total exclusion of these areas. We do not reach these claims because we conclude that the amendment is reasonably related to balancing conservation and development. See *Bortner* v. *Woodbridge*, 250 Conn. 241, 251 n.13, 736 A.2d 104 (1999) (court does not decide issues unnecessary to resolution of case). Finally, the plaintiffs claim that the town's initial adoption of large lot zoning was based, in part, on topographical

## IV

Finally, we address the plaintiffs' contention that the trial court improperly concluded that the amendment satisfies the uniformity requirement set forth in § 8-2 (a). See footnote 9 of this opinion. The plaintiffs make three claims in this regard. First, they contend that parcels of land in the same zone are affected differently depending upon whether they contain wetlands and slopes greater than 25 percent and also upon the amount of these areas that they contain. Second, they claim that the amendment is subject to inconsistent application because the terms "wetlands," "watercourses" and "slopes greater than 25 percent" are unreasonably imprecise. Finally, the plaintiffs contend that the amendment violates the statutory requirement of uniformity in that it does not apply to lots that are part of a subdivision application filed prior to the amendment's effective date or to lots that already had been developed or had been approved for development. We reject the plaintiffs' claims.

Section 8-2 (a) authorizes the zoning commission to "regulate the erection, construction, reconstruction, alteration or use of buildings or structures and the use of land" provided that "[a]ll such regulations shall be uniform for each class or kind of buildings, structures or use of land throughout each district . . . ." This court has noted that "[a] general rule requiring uniform regulations serves the interests of providing fair notice to applicants and of ensuring their equal treatment." *Kaufman* v. *Zoning Commission*, 232 Conn. 122, 147, 653 A.2d 798 (1995). "Vague regulations which contain

---

considerations. They contend, therefore, that the zoning commission's amendment results in the second exclusion of the same types of land that were excluded in establishing the initial minimum lot sizes for the zones. We find nothing in the record, however, supporting the plaintiffs' claim that the town's initial adoption of large lot zoning was based on topographical considerations.

meaningless standards lead to ambiguous interpretations in determining the approval or disapproval of different subdivisions. Adequate, fixed and sufficient standards of guidance for the commission must be delineated in its regulations so as to avoid decisions, affecting the rights of property owners, which would otherwise be a purely arbitrary choice of the commission; such a delegation of arbitrary power is invalid. *Sonn* v. *Planning Commission*, 172 Conn. 156, 162, 374 A.2d 159 (1976). The subdivision regulations upon which the commission, acting administratively, should rule must contain known and fixed standards applying to all cases of a like nature . . . ." (Internal quotation marks omitted.) *Ghent* v. *Planning Commission*, 219 Conn. 511, 517, 594 A.2d 5 (1991). "The standard for determining the adequacy of subdivision regulations [therefore] is whether they are as reasonably precise as the subject matter requires and are reasonably adequate and sufficient to guide the commission and to enable those affected to know their rights and obligations. . . . Although some standards may be general, the regulation must be reasonably sufficient to identify the criteria to be evaluated in their enforcement in order to meet the many variables involved since it would be impossible to establish one standard which would adequately cover all future cases." (Citations omitted; internal quotation marks omitted.) *Smith* v. *Zoning Board of Appeals*, 227 Conn. 71, 93–94, 629 A.2d 1089 (1993), cert. denied, 510 U.S. 1164, 114 S. Ct. 1190, 127 L. Ed. 2d 540 (1994).

In the present case, the plaintiffs first claim that the amendment violates the uniformity provision set forth in § 8-2 (a) because, in practice, the amendment creates different minimum lot sizes within the same zoning district depending upon whether and in what amount a parcel contains wetlands, watercourses and slopes greater than 25 percent. In support of this claim, they rely on *Veseskis* v. *Bristol Zoning Commission*, 168

Conn. 358, 359–60, 362 A.2d 538 (1975), and contend that the trial court improperly rejected its application. We disagree.

It is well established that the purpose of the uniformity requirement is to ensure that subdivision applicants are treated equally. See, e.g., *Kaufman* v. *Zoning Commission*, supra, 232 Conn. 147; *Veseskis* v. *Zoning Commission*, supra, 168 Conn. 360. After finding that the amendment at issue treats applicants equally, the trial court concluded that "the amendment applies consistently to all parcels throughout residential zones." In doing so, the trial court rejected the plaintiffs' reliance on our decision in *Veseskis*, wherein we held that a commission's creation of a special buffer strip on one specific individual piece of property by an amendment to its zoning regulations violated § 8-2. *Veseskis* v. *Zoning Commission*, supra, 359–60. The trial court concluded that *Veseskis* is inapposite to the present case because in that case, the zoning commission's regulation affected only one specific parcel of land; id.; whereas in the present case, the amendment applies to all parcels of land that contain the features set forth in the amendment.

On appeal, the parties do not dispute that the amendment has a different affect on parcels of land depending upon whether the parcels contain wetlands, watercourses and slopes greater than 25 percent and depending upon how much of these types of land the parcels contain. That is, the parties agree that, in order to satisfy the minimum lot area required for development, the practical effect of the amendment is a requirement that parcels with wetlands, watercourses and slopes greater than 25 percent be larger. The parties dispute, however, whether this differing affect is inconsistent, or unequal, and, therefore, in violation of § 8-2 (a).

In reaching our conclusion in *Veseskis*, that a regulation affecting only one parcel of land, and not affecting other similarly situated parcels, was violative of the statutory requirement of uniformity, we stated that "[t]he obvious purpose of the requirement of uniformity in the regulations is to assure property owners that there shall be no improper discrimination, all owners of the same class and in the same district being treated alike with provision for relief in cases of exceptional difficulty or unusual hardship by action of the zoning board of appeals." Id., 360. In the present case, the zoning commission's amendment applies to all parcels of land in residential zones throughout the town. It affects, however, only those parcels that have the features that it has excluded from the calculation of minimum lot area. Thus, parcels that contain wetlands, watercourses or slopes greater than 25 percent will ultimately require more overall land to meet the minimum lot size requirement than parcels without these features. We conclude, however, that the fact that the amendment has this differing *effect* on parcels of land throughout the town does not render its *application* inconsistent or unequal.

The thrust of the statutory requirement of uniformity is equal treatment. See, e.g., *Kaufman* v. *Zoning Commission*, supra, 232 Conn. 147; *Veseskis* v. *Zoning Commission*, supra, 168 Conn. 360. It is undisputed that, although the amendment ultimately has a differing effect on parcels of land depending on the presence and amount of wetlands, watercourses and slopes greater than 25 percent, it is applied to every parcel within its purview consistently and equally. We conclude, therefore, that the trial court properly determined that the amendment does not require different minimum lot sizes, and, therefore, does not violate § 8-2 (a) in this respect.

Additionally, the plaintiffs claim that the amendment is subject to inconsistent application in violation of § 8-2 (a) because the terms "wetlands," "watercourses" and "slopes greater than 25 percent" are imprecise. Specifically, the plaintiffs contend that what constitutes wetlands and watercourses is a matter of opinion and that the calculation of slopes depends on which contours are employed in the computation. Therefore, they contend that, because the amendment is not reasonably precise to guide the zoning commission in its application, it necessarily violates the statutory requirement of uniformity. We disagree.

In concluding that the amendment is sufficiently precise to satisfy the uniformity requirement set forth in § 8-2 (a), the trial court relied on evidence that "slopes can be identified through engineering techniques" and that "wetlands are defined under General Statutes § 22a-38."[19] The plaintiffs claim that the trial court's conclusion in this regard was improper for several reasons. First, with regard to the amendment's exclusion of slopes greater than 25 percent, the plaintiffs claim in their brief that "[w]hile it is possible to do an engineering calculation as to which areas and amounts of land have greater than a 25 [percent] grade, the result necessarily depends upon which contour lines are used to make the calculation, and two engineers stated at the public hearing that the result would not be the

---

[19] General Statutes § 22a-38 provides in relevant part: "(15) 'Wetlands' means land, including submerged land, not regulated pursuant to sections 22a-28 to 22a-35, inclusive, which consists of any of the soil types designated as poorly drained, very poorly drained, alluvial, and floodplain by the National Cooperative Soils Survey, as may be amended from time to time, of the Natural Resources Conservation Service of the United States Department of Agriculture;

"(16) 'Watercourses' means rivers, streams, brooks, waterways, lakes, ponds, marshes, swamps, bogs and all other bodies of water, natural or artificial, vernal or intermittent, public or private, which are contained within, flow through or border upon this state or any portion thereof, not regulated pursuant to sections 22a-28 to 22a-35, inclusive. . . ."

same." The plaintiffs further contend that the regulation is impermissibly compromised by its failure to detail "whether the 25 [percent] slope is calculated using only areas within the lot, or whether it is calculated from the lot boundaries." Finally, with regard to wetlands, the plaintiffs claim that "whether an area is a wetland or a watercourse is also a matter of opinion to some extent" because § 22a-38 is not specifically incorporated into the amendment, and because "[w]hile wetlands as defined in [§ 22a-38 (15)] includes land containing [four] designated soil types, not even a soil scientist is always able to determine precisely where the boundary exists between wetland and nonwetland soils."

Our search of the record, however, reveals that the trial court reasonably could have concluded that the amendment is sufficiently precise. A regulation must only be "reasonably sufficient to identify the criteria to be evaluated in [its] enforcement . . . since it would be impossible to establish one standard which would adequately cover all future cases." *Nicoli* v. *Planning & Zoning Commission*, supra, 171 Conn. 93. David N. Hubbard, the town's director of community planning and economic development, submitted written correspondence to the zoning commission that the identification of slopes is routine, and modern computers enable engineers and surveyors to easily identify and mark steep slopes and wetlands at any requested interval or distance. Moreover, in proving that their land contains wetlands and slopes greater than 25 percent, the plaintiffs necessarily utilized and relied on these engineering techniques. Indeed, Posthauer testified for the plaintiffs on the issue of aggrievement regarding how he and his office of professional engineers followed the "standard practice . . . that engineers use today" to determine the amount of the plaintiffs' land that consists of wetlands and slopes greater than 25 percent. He explained:

"We used existing [United States Geological Service] topographic maps, we combined them with the [town] assessor's maps . . . we traced contours, on the computer we assign elevations to those contours, we used a map that we had in our office which is based on the Soil Conservation Service soil study to determine wetlands, we transposed those on to our maps, and then we . . . calculated the areas of wetlands and areas of greater than 25 percent slope . . . [which] is done by the computer program . . . ." Furthermore, although the amendment does not incorporate explicitly a definition of wetlands and watercourses, § 22a-38 contains a definition of these land features, which the zoning commission maintains will guide measurements of these land features when evaluating subdivision applications. Finally, we are not persuaded by the plaintiffs' contention that the incorporation of the definition of wetlands in § 22a-38 is not sufficient to cure any ambiguity because even a soil scientist is not always able to determine precisely where the boundary exists between wetland and nonwetland soils. Following the plaintiffs' contention to its logical conclusion, the zoning commission could never create a sufficiently precise regulation. We have held, however, that the uniformity provision in § 8-2 (a) requires that a regulation be reasonably precise, not exact, because we recognize that it is impossible to create one standard that covers all cases. See, e.g., *Kaufman* v. *Zoning Commission*, supra, 232 Conn. 122; *Smith* v. *Zoning Board of Appeals*, supra, 227 Conn. 93–94; *Ghent* v. *Planning Commission*, supra, 219 Conn. 517; *Nicoli* v. *Planning & Zoning Commission*, supra, 93; *Forest Construction Co.* v. *Planning & Zoning Commission*, supra, 155 Conn. 680. Statutory uniformity requires that regulations are sufficiently precise so as to apprise both the zoning commission and an applicant of what is required, as well as to provide guidance to the zoning commission in applying

the regulation, and to ensure equal treatment to each applicant subject to the regulation. *Kaufman* v. *Zoning Commission*, supra, 147. In the present case, we conclude that the trial court reasonably could have concluded from the evidence before it that, because slopes greater than 25 percent can be identified using standard engineering practice and wetlands can be identified pursuant to § 22a-38, the amendment is sufficiently precise to guide the zoning commission as well as to protect applicants.

Finally, the plaintiffs claim that the amendment violates the statutory requirement of uniformity in § 8-2 (a) because it does not apply to lots that are part of a subdivision application that was filed prior to the amendment's effective date or to lots that already have been developed or already have been approved for development. Under Connecticut law, previously approved subdivisions are exempt from changes in zoning regulations; General Statutes § 8-26a (b);[20] and land referenced in an application filed with the zoning commission prior to the adoption of an amendment is exempt from that amendment. General Statutes § 8-2h (a).[21] Therefore, lots that are subject to the amendment

_____

[20] General Statutes § 8-26a (b) provides: "Notwithstanding the provisions of any general or special act or local ordinance, when a change is adopted in the zoning regulations or boundaries of zoning districts of any town, city or borough, no lot or lots shown on a subdivision plan for residential property which has been approved, prior to the effective date of such change, by the planning commission of such town, city or borough, or other body exercising the powers of such commission, and filed or recorded with the town clerk, shall be required to conform to such change."

[21] General Statutes § 8-2h (a) provides: "An application filed with a zoning commission, planning and zoning commission, zoning board of appeals or agency exercising zoning authority of a town, city or borough which is in conformance with the applicable zoning regulations as of the time of filing shall not be required to comply with, nor shall it be disapproved for the reason that it does not comply with, any change in the zoning regulations or the boundaries of zoning districts of such town, city or borough taking effect after the filing of such application."

are treated differently than lots that are statutorily exempt from the amendment. According to the plaintiffs, this divergence violates § 8-2 (a). We are not persuaded by this argument. If we were to accept the plaintiffs' contention, every instance in which a local zoning commission amends its regulations so as to trigger the exemptions provided for in §§ 8-26a (b) and 8-2h (a) would result in an impermissible violation of the uniformity provision set forth in § 8-2 (a). This would be, in our view, an untenable result. We do not read statutory provisions to further bizarre or absurd results. *Modern Cigarette, Inc.* v. *Orange*, 256 Conn. 105, 120–21, 774 A.2d 969 (2001) (statutes construed using common sense and assuming reasonable and rational result intended; absurd consequences and bizarre results eschewed); *Southington* v. *Commercial Union Ins. Co.*, 254 Conn. 348, 360, 757 A.2d 549 (2000) (statutes read with common sense so as to avoid bizarre results). We conclude, therefore, that the amendment does not violate the uniformity requirement set forth in § 8-2 (a).

The judgment is affirmed.

In this opinion the other justices concurred.