[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff appeals from a decision of the defendant Inland Wetlands Commission of the town of Winchester (commission) denying her application for a wetlands permit to construct an eight foot high fence within fifty feet of the shores of Highland Lake. The commission is an inland wetlands agency acting under the authority of General Statutes § 22a-42. The defendant Allen J. Bemardini owns residential premises abutting the plaintiff's property. The defendant Arthur J. Rocque, commissioner of environmental protection, was not a party to the underlying proceedings but was served with this appeal pursuant to General Statutes § 22a-43
(a). He does not appear in this action. The appeal is brought pursuant to General Statutes §§ 22a-43 and 8-8. For the reasons set forth below, the court finds the issues in favor of the defendants.
The following facts are not in dispute and are found in the record of this case. On April 18, 2001, the commission accepted an application from the plaintiff in which she sought permission to install a wooden fence with the maximum height eight feet along the westerly and easterly boundary lines of her property lying within fifty feet of Highland Lake. At its May 14, 2001 meeting the commission scheduled a public hearing for June 20, 2001, after receiving a petition signed by at least twenty five persons requesting such a hearing. On May 15, 2001, Bernardini filed a verified notice of intervention pursuant to General Statutes § 22a-19. A public hearing was held on the application on June 20 and July 18, 2001. On July 23, 2001, the commission held a special meeting and denied the plaintiff's application. Notice was published on July 26, 2001. This appeal followed.
The commission filed the return of record on February 4, 2002; the plaintiff filed her brief on April 4, 2002; and the defendants filed their respective briefs on June 4, 2002. The plaintiff filed a reply brief on June 14, 2002. The court considered evidence on aggrievement and heard oral argument on June 17, 2002. On June 19, 2002, with permission of the court, Bernardini filed a surreply brief.
Before turning to the issues on appeal, the court must address the question of aggrievement. East Side Civic Assn. v. Planning and ZoningCT Page 10673Commissioner, 161 Conn. 558, 559 (1971); Park City Hospital v. Commissionon Hospitals and Health Care, 14 Conn. App. 413, 417 (1988), aff'd,210 Conn. 697 (1989). Under General Statutes § 22a-43, a person aggrieved by an order of the commission may appeal from that order. As noted most recently by our Supreme Court in Med-Trans of Conn., Inc. v.Dept of Public Health Addiction Services, 242 Conn. 152, 158-59
(1997), the test for determining aggrievement is twofold:
 First, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision. . . .
(Citations omitted).
In Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 530
(1987), the Supreme Court held that an owner of the subject property met the two requirements to find aggrievement. The court here heard testimony from the plaintiff that she is the owner of the subject property. The defendants presented no evidence to rebut this testimony. The court finds that the plaintiff is the owner of the property and is aggrieved by the order of the commission denying her application.
The plaintiff expressly raises four issues in her brief (pp. 34-35). The crux of her appeal, however, rests on two issues: 1) Does the commission have authority to prohibit activity outside the watercourse or wetland area solely on the basis that the activity would obstruct a view of the watercourse or wetland from an upland location; and 2) was the above the sole stated reason for the commission's decision and if it was not, was the commission's decision supported by substantial evidence in the record.
This court's limited scope of review of decisions from inland wetland agencies is well established.
In reviewing an inland wetlands agency decision made pursuant to the act, the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial; [the credibility CT Page 10674 of witnesses and the determination of factual issues are matters within the province of the administrative agency. . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [it] imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous. . . . The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . .
(Citations omitted; internal quotations omitted.) Samperi v. InlandWetlands Agency, 226 Conn. 579, 587-88 (1993). In other words, this court cannot substitute its judgment for that of the commission where the record contains substantial evidence to support the commission's decision and where appropriate procedures were followed.
Turning first to the issue of whether the commission stated a reason for its decision, the recent case, Harris v. Zoning Commission,259 Conn. 402 (2002) is instructive. In that case, while a commission member articulated a detailed reason for his vote, there was no formal reason issued by the commission with its decision. The aggrieved party appealed the decision, arguing in part that the reviewing court was limited in its review of the record to the reason articulated by the commission member. The Harris court rejected that argument and, quotingProtect Hamden/North Haven v. Planning Zoning Commission, 220 Conn. 527,544 (2002), noted,
 The principle that a court should confine its review to the reasons given by a zoning agency . . . applies [only] where the agency has rendered a formal, official, collective statement of reasons for its action. It does not apply to mere utterances of individual members of the agency.
(Brackets in original; internal quotation marks omitted.) Harris v.Zoning Commission, supra, 259 Conn. 420. The court went on to explain CT Page 10675 that a "formal official collective statement of reasons for [an agency's] actions" occurs when the commission "couples its communication of its ultimate decision with express reasons behind that decision." Id., 420-21. Finally, the Harris court narrowed its holding with the following language:
 Thus, in the absence of consistent statements of purpose by the zoning commission members, we note that the principle that a court should confine its review to the reasons given by a zoning agency does not apply to any utterances, however incomplete, by the members of the agency subsequent to their vote. Nor is it appropriate for a reviewing court to attempt to glean such a formal, collective statement from the minutes of the discussion by [the agency] members prior to [the agency's] vote.
(Brackets in original; internal quotation marks omitted.) Id., 422-23.
A review of the transcript of the July 23, 2001 special meeting reveals no formal, official, collective statement of reasons for the commission's decision to deny the plaintiffs application. The vote was 4-2. And while all four members in the majority made statements, there was not a consistent statement of purpose.[1] Moreover, no formal reason was pronounced with the vote. Accordingly, this court reviews the record to find any basis to support the commission's decision.
Under the applicable regulation of the Winchester Inland Wetlands and Watercourses regulations, § 10.2, the commission must consider certain criteria to carry out the statutory purposes of the inland wetlands act when it issues a decision on an application involving regulated activity. Regulated activity includes activity within fifty feet of a wetlands and watercourses under § 2.1 of the Winchester Inland Wetlands and Watercourses Regulations. These criteria include the environmental impact of the proposed regulated activity on wetlands or watercourses; the character and degree of injury to, or interference with, safety, health or the reasonable use of property which is caused or threatened by the proposed regulated activity; impacts of the proposed regulated activity on wetlands or watercourses outside the area for which the activity is proposed and future activities associated with, or reasonably related to, the proposed regulated activity which are made inevitable by the proposed regulated activity and which may have an impact on wetlands or watercourses. In addition, because the defendant Bernardini intervened pursuant to § 22a-19 (a), the commission had to consider "the alleged unreasonable pollution, impairment or destruction of the public trust in the air, water or other natural resources of the CT Page 10676 state" and could not authorize conduct "which does, or is reasonably likely to, have such effect so long as, considering all relevant surrounding circumstances and factors, there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety and welfare." General Statutes § 22a-19 (b).
The court has reviewed the record, reading the transcripts of two days of public hearing, when extensive discussion took place, including presentations by a wetlands scientist and wildlife biologist, who spoke about the potential impact on the wildlife that inhabit the area, as well as the changes in soil erosion and drainage, and a wetlands scientist who rebutted that testimony. "The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . . Samperi v. Inland Wetlands Agency, supra,226 Conn. 588. Further,
 "We have said that an administrative agency is not required to believe any witness, even an expert, nor is it required to use in any particular fashion any of the materials presented to it so long as the conduct of the hearing is fundamentally fair.
Huck v. Inland Wetlands Watercourses Agency, supra, 203 Conn. 542.
The plaintiff has argued that the commission has acted outside the authority of General Statutes § 22a-42a (f) which provides,
 If a municipal inland wetlands agency regulates activities within areas around wetlands or watercourses, such regulation shall (1) be in accordance with the provisions of the inland wetlands regulations adopted by such agency related to application for, and approval of, activities to be conducted in wetlands or watercourses and (2) apply only to those activities which are likely to impact or affect wetlands or watercourses.
Based upon its review of the record, the court finds that there is substantial evidence to support a finding that the construction of an eight foot high solid cedar fence to the shoreline retaining wall on each side of the plaintiff's property is "likely to impact or affect" Highland Lake. Under the statutory scheme to preserve wetlands and watercourses, the commission is authorized to effectuate and carry out that purpose through regulation of activities affecting the wetlands and watercourses CT Page 10677 within the town of Winchester. General Statutes § 22a-36 reads in part,
 It is, therefore, the purpose of sections 22a-36 to 22a-45, inclusive, to protect the citizens of the state by making provisions for the protection, preservation, maintenance and use of the inland wetlands and watercourses by minimizing their disturbance and pollution; maintaining and improving water quality in accordance with the highest standards set by federal, state or local authority; preventing damage from erosion, turbidity or siltation; preventing loss of fish and other beneficial aquatic organisms, wildlife and vegetation and the destruction of the natural habitats thereof; deterring and inhibiting the danger of flood and pollution; protecting the quality of wetlands and watercourses for their conservation, economic, aesthetic, recreational and other public and private uses and values; and protecting the state's potable fresh water supplies from the dangers of drought, overdraft, pollution, misuse and mismanagement by providing an orderly process to balance the need for the economic growth of the state and the use of its land with the need to protect its environment and ecology in order to forever guarantee to the people of the state, the safety of such natural resources for their benefit and enjoyment and for the benefit and enjoyment of generations yet unborn.
(Emphasis added.)
Based upon this express legislative finding and the specific criteria set forth in the applicable regulations and statutes, the action of the commission is supported by the record. While the plaintiff argues that the commission's decision was inappropriately and solely based on the effect the fence would have on neighbors' views of the lake from outside the wetlands, watercourse or buffer area, the court disagrees. The proposed solid fence reaching to the shoreline retaining wall and rising to a height of eight feet affects the watercourse itself. Because the fence is within the fifty foot buffer area it is regulated activity under the commission's jurisdiction. There was substantial evidence of the aesthetic effect on the lake and the potential impact on wildlife. Further, there was no demonstration by the plaintiff that no prudent or feasible alternative existed to the eight foot high solid fence as required under General Statutes § 22a-19 (b). See Samperi v. InlandCT Page 10678Wetlands Agency, supra, 226 Conn. 593.
For the foregoing reasons the appeal is dismissed.